FRED S. NOLAN, RALPH R. BATTISTA, CHARLES W. CLEARY, JOSEPH A. DAVIS, WILLIAM J. DAVITT, JR., ANTHONY G. GOMES, JAMES HALLECK, DONALD C. HALLIWELL, PHYLLIS J. GORLEY KERKAWICH, JOSEPH M. KARKOSKY, JR., CHARLES KERR, PATRICK J. LARGEY, JR., ARMAND MACHADO, EDWARD M. MCBRIDE, THOMAS P. NUGENT, PETER J. REILLY, HERMAN J. RUSSOMANNO, EUGENE A. SCANNEPICO, RAYMOND J. SMITH, JOHN T. STARR, HAROLD C. STOLL, LOUIS C. TREMBLE, JAMES VAN BRAMER, WALTER WARD AND DANIEL M. WATSON, PLAINTIFFS-RESPONDENTS, v. OTIS ELEVATOR COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued November 19, 1985—Decided February 26, 1986.

*Peter F. Healey,* a member of the District of Columbia bar, argued the cause for appellant (*Stoldt, Horan & Cino,* attorneys; *John D. Horan* of counsel and on the briefs).

*William S. Greenberg* argued the cause for respondent (*Greenberg & Prior,* attorneys; *James F. Schwerin* on the briefs).

*Susan L. Reisner,* Deputy Attorney General, argued the cause for intervenor New Jersey Division on Civil Rights (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Deputy Attorney General, of counsel; *Susan L. Reisner* and *Nancy Kaplen Miller,* Deputy Attorneys General, on the brief).

*Rosemary Alito* submitted a brief on behalf of *amicus curiae* Equal Employment Advisory Council (*Carpenter, Bennett & Morrissey,* attorneys).

The opinion of the Court was delivered by

O'HERN, Justice.

The threshold question in this appeal is whether the federal Employee Retirement Income Security Act of 1974 (ERISA) preempts the application of New Jersey's Law Against Discrimination (NJLAD) to a claim of age discrimination in an employee pension plan when the action is brought after the comparable federal time requirement for such an action has not been met. The underlying substantive issue is whether a supplementary plan of voluntary early retirement benefits offered to supervisory employees who have attained age 55 with 25 years of

eligible service discriminated against younger workers who may have the same number of years in service.

We hold that ERISA preempts the untimely claim under state law and therefore do not resolve the substantive issues, although we note the apparent impediments to such a claim posed by saving provisions of the federal Age Discrimination in Employment Act (ADEA).

I

The plaintiffs in this case were all employees of defendant, Otis Elevator Company, at its Harrison, New Jersey plant. They were management-level employees who were not represented by a labor union. The Harrison plant was closed on December 31, 1980. Plaintiffs were laid off from work at various times; some of the plaintiffs stayed on until the final closing-down of the plant even though their employment had previously been formally terminated.

Each plaintiff received as a severance benefit one week's salary for each year of service. All of the plaintiffs had at least 25 years or more of service and were under the age of 55. Other Otis employees who were over 55 years of age but otherwise similarly situated with the plaintiffs did not receive severance pay but instead became eligible immediately for benefits under a special supplemental retirement plan. Under this special plan, those over-55 employees receive 90 percent of their final average annual earnings for a four-year period or until they reach the age of 62, whichever is longer. The 90 percent benefit is calculated on the basis of the income from all sources, including income derived from social security as well as benefits payable under Otis' basic retirement plan. The basic plan remains in effect for all of the employees, whether over or under 55, pursuant to vested rights they have in it. Plaintiffs instituted this action under the NJLAD for relief in the form of benefits equal to those received by employees who qualified for the supplemental plan.

Because the case arises on motion for summary judgment, we accept as true the plaintiffs' version of the facts. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74–75 (1954). The background relevant to the creation of the so-called "Harrison Special Supplemental Retirement Plan" (HSSRP) is drawn from the deposition testimony of James Nelson, Manager of Employee Benefits for United Technologies Corporation, the parent corporation of Otis.

Mr. Nelson was responsible for the design and costing of the HSSRP. The plan was developed after Otis made a special request to United Technologies regarding use of a deferred-compensation program. The requirements written into the plan were that any recipient: (1) must have had 25 years or more of service with Otis because this was deemed a significant period of service, and (2) must have attained the age of 55 because that was the standard early retirement age used in existing Otis benefit plans. The Harrison plan was based in structure on one used previously in conjunction with a reduction in force at Pratt and Whitney, an aerospace division of United Technologies. No policy exists within United Technologies regarding the offering of such a plan in any given situation. Apparently the HSSRP was offered to eligible employees of Otis in January or February 1980.

As initially contemplated, the HSSRP was to be utilized as part of a scaling-down of the Harrison operation before any decision was made to close it down completely. It was said to be designed to encourage employees who were eligible for early retirement to retire voluntarily sooner rather than later and to make remaining opportunities available to more people. The deferred-compensation program was established specifically for the two occasions on which it was used: the 1976 reduction-in-force at Pratt and Whitney, and the situation regarding the Otis facility in Harrison. Unlike longstanding benefit plans, such as the Otis Basic Retirement Plan for Salaried Employees (OBRPSE), which have printed booklets describing the plans and their benefits that are routinely made available to all

employees, no booklet was ever printed for the HSSRP. In fact, the plan was not made known by Otis to any employees other than the ones who met the criteria for inclusion: salaried management employees with 25 years or more of service who were age 55 or older. Similarly, the 1976 Pratt and Whitney plan was never publicized in booklet form either.

Nelson testified that in creating the HSSRP, he did check all ERISA regulations and various other regulations of the United States Department of Labor, and consulted with the legal staff at Otis Elevator Company. The individual agreement form for those participating in the HSSRP stated that it was to be interpreted under the laws of New York, the state where Otis Elevator Company's headquarters were located. Nelson himself never saw any opinion letters from the wage-hour administrator regarding age discrimination in severance benefits although he did state that he consulted published information. With regard to proposed Equal Employment Opportunity Commission (EEOC) regulations appearing in the Federal Register of November 30, 1979, regarding extension of additional benefits to older employees to encourage opportunities for such individuals, Nelson testified that he considered only the fact that age 55 was consistent with existing retirement policies and that because originally the plan was to be utilized together with a phase-out rather than a closing, it would make more opportunities available to remaining people. No study was ever undertaken on behalf of Otis or United regarding the differences in severance benefits or compensation to be paid to any Harrison employees on the basis of age, nor was any report ever prepared as to reasons for paying more to employees age 55 with 25 years or more of service than to those who also had 25 years or more of service but were not age 55. There were no studies or even discussions of the problem of getting new or other employment for older employees who would no longer be working at Otis' Harrison facility. On the question of promoting opportunities for individuals who might experience disproportionate hardship due to their age, Nelson testified that the only

factor considered was that age 55 was consistent with existing retirement policies.

Otis apparently began to offer the HSSRP to eligible employees in January or February of 1980. Eligibility to participate in the HSSRP was limited to managerial employees who, by virtue of their service, already qualified for early retirement under Otis' basic pension plan. Defendant asserts that by March or April of 1980 a number of the plaintiffs herein had learned from eligible employees that the HSSRP had been offered to eligible employees. Defendant asserts that it was not until May 1980 that the decision was made to close the Harrison plant due to its continuing losses and that the closing was not completed until December 1980. Plaintiffs contest this point most vigorously. They assert that since Otis planned to shut down the plant long before May, the HSSRP plan was not bona fide, but was a scheme to evade the strictures against discrimination on account of age and a subterfuge to avoid the economic warfare that attends the closing of a plant. Plaintiffs argue that they should be treated equally with other members of the work force.

No action was brought in state or federal forums, however, until May 12, 1982, when the 25 individual plaintiffs filed a Superior Court complaint against defendant, alleging a cause of action arising under the New Jersey Law Against Discrimination (NJLAD), *N.J.S.A.* 10:5-1 to -42, for discrimination on the basis of age.

After removal to and remand from the United States District Court for New Jersey, the case came on for summary judgment in the Superior Court, Law Division. The Law Division granted Otis' motion for summary judgment on the ground that federal regulation of employee benefit plans, through ERISA, preempts the NJLAD when the NJLAD is used to challenge an employee benefit plan. Under applicable federal law, inconsistent provisions of state law relating to employee benefit plans are preempted unless their preemption would impair federal law.

*Shaw v. Delta Air Lines, Inc.,* 463 *U.S.* 85, 102–03, 103 *S.Ct.* 2890, 2902–03, 77 *L.Ed.*2d 490, 504–05 (1983). The trial court found that the NJLAD, under which plaintiffs' claim was brought, related to an ERISA-regulated employee benefit plan and that its preemption would not impair the federal age discrimination law. 197 *N.J.Super.* 70, 75–77 (1983).

On appeal, the Appellate Division reversed, finding that a sufficient interrelationship exists between the NJLAD and the ADEA so that enforcement of the federal law would be hampered if the state law were preempted. The court therefore concluded that even a limited preemption of a right of direct suit under the NJLAD would impair the ADEA. 197 *N.J.Super.* 468, 472–73.

We granted the defendant's petition for certification. 101 *N.J.* 272 (1985).

## II

The history and background of the federal Employee Retirement Income Security Act (ERISA), 29 *U.S.C.A.* §§ 1001 to 1461, have been set forth in a series of United States Supreme Court decisions. A brief description of the act will suffice.

Congress enacted ERISA in 1974 "to protect participants of employee benefit plans and their beneficiaries from the abuses which previously existed in many retirement plans." *See* Note, *ERISA: Preemption of State Health Care Laws and Worker Well-Being,* 4 U.Ill.L.F. 825 (1981) (footnotes omitted). Both lower courts found—and plaintiffs do not argue otherwise—that the HSSRP is an "employee benefit plan." *See* 29 *U.S.C.A.* § 1002(3) ("employee benefit plan" includes both pension plans and health and welfare plans). The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans. It is a "comprehensive and reticulated statute," which Congress adopted after careful

study of private retirement pension plans. *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 *U.S.* 359, 361, 100 *S.Ct.* 1723, 1726, 64 *L.Ed.*2d 354, 358 (1980). Congress, through ERISA, wanted to insure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—that he actually receive it." *Id.* at 375, 100 *S.Ct.* at 1733, 64 *L.Ed.*2d at 367. Congress has provided for civil and criminal enforcement of the act, and an insurance program was created to protect employees against the loss of benefits upon termination of pension plans that lack sufficient funds to pay such benefits in full. *Id.* at 361 n. 1, 100 *S.Ct.* at 1726 n. 1, 64 *L.Ed.*2d at 358 n. 1.

"Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Fidelity Federal Sav. & Loan Ass'n v. De la Cuesta*, 458 *U.S.* 141, 152–53, 102 *S.Ct.* 3014, 3022, 73 *L.Ed.*2d 664, 675 (1982) (citation omitted) (quoted in *Shaw v. Delta Air Lines, Inc., supra*, 463 *U.S.* at 95, 103 *S.Ct.* at 2899, 77 *L.Ed.*2d at 500). In enacting ERISA, Congress took nothing for granted. To guarantee federal uniformity in the supervision and administration of pension plans, Congress displaced entirely all prior state regulation of such employee benefit programs. The act includes one of the most sweeping preemption provisions ever contained in any federal program. Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." 29 *U.S.C.A.* § 1144(a). In *Alessi v. Raybestos-Manhattan, Inc.*, 451 *U.S.* 504, 101 *S.Ct.* 1895, 68 *L.Ed.*2d 402 (1981), the United States Supreme Court held that ERISA preempted a New Jersey statute that did not allow employers to reduce a retiree's pension benefit by an amount equal to the retiree's workers' compensation award. The Court stated: "It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly, through a

statute called 'pension regulation.' ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern." *Id.* at 525, 101 *S.Ct.* at 1907, 68 *L.Ed.*2d at 418. Saved only are state laws regulating insurance, banking and securities, and generally-applicable state criminal laws. 29 *U.S.C.A.* § 1144(b)(2)(A) and (b)(4).

The parties agree, as the lower courts found, that the NJLAD "relates to" ERISA benefit plans and comes within § 514 of ERISA. The only hope for survival of New Jersey's law against discrimination stems from its symbiotic relationship with federal laws against discrimination. Section 514(d) of ERISA provides that: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States * * * or any rule or regulation issued under any such law." 29 *U.S.C.A.* § 1144(d). Quite simply, the question is whether preemption of the NJLAD will impair a law of the United States.

The key case is, of course, *Shaw v. Delta Air Lines, supra,* 463 *U.S.* 85, 103 *S.Ct.* 2890, 77 *L.Ed.*2d 490. At issue in *Shaw* was a provision of the New York Human Rights Law, *N.Y. Exec.Law* §§ 290 to 301 (McKinney 1982 and Supp.1982–1983), that required employee health-benefit plans to pay sick-leave benefits to employees unable to work because of pregnancy or other nonoccupational disabilities. *N.Y.Exec.Law* § 296.1. Noting that ERISA originally contained a limited preemption clause that encompassed only state laws applicable to the specific subjects covered by ERISA and that Congress rejected this provision in favor of the present language, the Court found that "the section's pre-emptive scope was as broad as its language." *Shaw, supra,* 463 *U.S.* at 98, 103 *S.Ct.* at 2901, 77 *L.Ed.*2d at 502. In the preemptive section of 514(a) Congress used the phrase "relate to" in its broad sense; hence the pregnancy-benefit provisions clearly related to the administration of an ERISA plan. *Id.* at 100, 103 *S.Ct.* at 2901, 77 *L.Ed.* 2d at 502–03.

Turning then to the only available savings provision, that of section 514(d) that ERISA should not be construed to impair or supersede any law of the United States, the Court noted that Title VII of the Federal Civil Rights Act required recourse to available state administrative remedies whenever an employment practice prohibited by Title VII occurs in a state that prohibits the practice and has established an agency to enforce the prohibition. *Id.* at 101–02, 103 *S.Ct.* at 2902, 77 *L.Ed.*2d at 504 (citing 42 *U.S.C.* § 2000e–5(b)). Hence, the Court concluded that a full preemption of New York's Human Rights Law would impair Title VII to the extent that the state law against discrimination provides a means of enforcing Title VII's command. Insofar as the state law outlaws employment practices that are lawful under Title VII, however, preemption would not impair the federal program within the meaning of § 514(d). *Shaw, supra,* 463 *U.S.* at 102–03, 103 *S.Ct.* at 2902–03, 77 *L.Ed.* 2d at 504–05. Therefore, the Court invalidated that provision of the New York law that would have mandated pregnancy benefits, a substantive requirement not contained in the federal plan. *Id.* at 109, 103 *S.Ct.* at 2906, 77 *L.Ed.*2d at 508. (Congress has since amended Title VII with the Pregnancy Discrimination Act of 1978, 42 *U.S.C.A.* § 2000e(k).)

Although phrased in terms of preempting state benefit plans only insofar as the plan prohibits practices that are lawful under federal law, we perceive in *Shaw* an underlying principle in favor of uniformity of administration of benefit plans. That Court emphasized an ERISA sponsor's statement:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.
>
> [*Shaw, supra,* 463 *U.S.* at 99, 103 *S.Ct.* at 2901, 77 *L.Ed.*2d at 502 (quoting 120 Cong.Rec. 29197 (1974) (Statement of Rep.Dent)).]

Thus, "[w]hile § 514(d) may operate to exempt provisions of state laws upon which federal laws *depend for their enforcement,* the combination of Congress' enactment of an all-inclu-

sive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand § 514(d) into a more general saving clause." *Id.* at 104, 103 *S.Ct.* at 2903, 77 *L.Ed.*2d at 505 (emphasis supplied). The Court concluded: "Congress applied the principle of pre-emption 'in its broadest sense to foreclose any non-Federal regulation of employee benefit · plans,' creating only very limited exceptions to preemption." *Id.* (quoting 120 Cong.Rec. 29197 (1974) (remarks of Rep.Dent)). Thus, the question of the availability of the state remedy sought turns on whether it is necessary to the continued life of the federal program.

### III

The federal Age Discrimination in Employment Act (ADEA) has an exhaustion-of-state-remedies requirement similar to that of Title VII. The scheme was discussed in *Oscar Mayer & Co. v. Evans,* 441 *U.S.* 750, 99 *S.Ct.* 2066, 60 *L.Ed.*2d 609 (1979), as being substantially patterned upon the Title VII deferral provisions that were reviewed in *Shaw v. Delta Air Lines, supra.* Section 14(b) of the ADEA provides that:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title [establishing right to bring civil action for age discrimination] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated * * *.
>
> [29 *U.S.C.A.* § 633(b).]

Noting that Congress intended under Title VII to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in a voluntary and localized matter, the Court concluded that the construction of section 14(b) in ADEA should follow that of Title VII in that it is intended that resort to administrative remedies in states with agencies empowered to remedy age discrimination is mandatory and not optional. *Oscar Mayer, supra,* 441 *U.S.* at 753, 99 *S.Ct.* at 2070, 60 *L.Ed.*2d at 614. The Court therefore conclud-

ed that prior resort to appropriate state proceedings is required under section 14(b) just as under Title VII. *Id.* at 756, 99 *S.Ct.* at 2071, 60 *L.Ed.*2d at 616.

Since state age-discrimination proceedings therefore form a part of the federal enforcement program, under the principles of *Shaw v. Delta Air Lines, supra,* the state law is not entirely preempted. The preemption would be partial; the state program could survive to the extent that it is not inconsistent with the federal program. *Shaw, supra,* 463 *U.S.* at 103–04, 103 *S.Ct.* at 2903, 77 *L.Ed.*2d at 504–05. Plaintiffs argue that since the substantive commands of both the NJLAD and the ADEA are essentially the same, there is no inconsistency.

We are left, however, with this inconsistency. No civil action at all may be commenced by an individual under the ADEA "until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission," 29 *U.S.C.A.* § 626(d), and, in the case of a deferral state, must be commenced "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, *whichever is earlier.*" 29 *U.S.C.A.* § 626(d)(2) (emphasis supplied). How then can it be said that the federal right "depends on" the state program, *Shaw, supra,* 463 *U.S.* at 103, 103 *S.Ct.* at 2903, 77 *L.Ed.*2d at 504–05, when in a given case the federal right has expired?[1]

---

[1]Strictly speaking, there are two relevant federal time periods under the ADEA. In a deferral state, such as New Jersey, the plaintiff must (1) comply with 29 *U.S.C.A.* § 626(d)(2), which requires that a charge alleging discrimination be filed with the EEOC within 300 days of the alleged unlawful practice, and (2) comply with 29 *U.S.C.A.* § 626(e), which incorporates the statute of limitations from the Portal-to-Portal Act under 29 *U.S.C.A.* § 255. *See Hay v. Wells Cargo, Inc.,* 596 *F.Supp.* 635, 638 (D.Nev.1984).

The limitations period under § 255 is three years in the case of a willful violation; otherwise it is two years. * * * Therefore, even though plaintiff may have filed his claim in federal court within the three year limitations period of §§ 626(e) and 255 the claim is still subject to dismissal if the time

■ It is the familiar question of substance and procedure. *See Guaranty Trust Co. v. York*, 326 *U.S.* 99, 65 *S.Ct.* 1464, 89 *L.Ed.* 2079 (1945). Generally speaking, the time within which a federal right is to be enjoyed is measured by the federal period of limitations. Where a federal statute establishes a limitation period for the enforcement of federal rights, and that period is an integral part of the right created, that limitation must be applied in actions brought in state courts, whether the state statute be longer or shorter. *Engel v. Davenport*, 271 *U.S.* 33, 46 *S.Ct.* 410, 70 *L.Ed.* 813 (1926); *Atlantic Coast Line R. Co. v. Burnette*, 239 *U.S.* 199, 36 *S.Ct.* 75, 60 *L.Ed.* 226 (1915); *see also McAllister v. Magnolia Petroleum Co.*, 357 *U.S.* 221, 228–30, 78 *S.Ct.* 1201, 1206–07, 2 *L.Ed.*2d 1272, 1278–79 (1958) (Brennan, J., concurring) (seaman's cause of action for unseaworthiness could be measured by analogous action and applicable three-year statute of limitations for negligence under Jones Act). And even when there is no federal period of limitations, federal policy is the dominant consideration in determining what is the appropriate period of limitations. *Del Costello v. Teamsters*, 462 *U.S.* 151, 170–71, 103 *S.Ct.* 2281, 2293–94, 76 *L.Ed.*2d 476, 492–93 (1983) (claim of breach of duty of fair representation so closely related to labor law that the six-month period for making charges of unfair labor practices to the NLRB should be applicable). Only when there is no period of limitations in the federal program do the federal courts borrow state statutes of limitations, and even in those circumstances a broad characterization of federal claims is necessary to achieve

---

requirements for filing a charge under § 626(d) are not met. [*Id.* (citation omitted).]

Since the plaintiffs have "failed to file a charge with the EEOC within 300 days of [their] termination, as required by § 626(d)(2) * * *," their claim is "barred unless a reason for equitable modification of the limitations period appears." *Id.; see also Heiar v. Crawford County*, 746 *F.*2d 1190, 1194–96 (7th Cir.1984), *cert. denied,* —— *U.S.* ——, 105 *S.Ct.* 3500, 87 *L.Ed.*2d 631 (1985).

national uniformity. *Wilson v. Garcia,* 471 *U.S.* ——, ——, 105 *S.Ct.* 1938, 1943–44, 85 *L.Ed.*2d 254, 262–63 (1985).

■ So dominant is the relationship of federal right over state remedy under ADEA that an inconsistent and shorter state period of limitations is to be disregarded if it interferes with the federal policy. In *Oscar Mayer, supra,* the plaintiff's employer moved to dismiss the complaint of age discrimination on the grounds that a state agency was empowered to remedy the discrimination and that section 14(b) of the ADEA required resort to the state remedy prior to commencement of a federal suit. The District Court denied the motion. The Court of Appeals affirmed, holding that the employee was not required to file a complaint with the state agency before coming into federal court. *Evans v. Oscar Mayer & Co.,* 580 *F.*2d 298, 300 (8th Cir.1978). The Supreme Court reversed but gave the claimant the opportunity to make a state claim. The Court held that even though the time within which plaintiff could have brought his action under Iowa law had expired, plaintiff could satisfy the deferral provisions of federal law by simply filing a claim with the state agency and leaving it to the state agency to determine whether it would enforce its limitations period. *Oscar Mayer, supra,* 441 *U.S.* at 764–65, 99 *S.Ct.* at 2075–76, 60 *L.Ed.*2d at 621. The requirement of deferral to the state was not to be confused with giving the state an opportunity to deny the right. *Id.*

To the same effect is *Kuntz v. Reese,* 760 *F.*2d 926 (9th Cir.1985). In light of Congress' intent " 'to provide the full range of legal and equitable remedies available in both state and federal courts * * *,' " that court concluded that application of the shorter California limitations period to the plaintiffs' claim of fund mismanagement was the kind of "jurisdictional or procedural obstacle to enforcement that Congress intended to eliminate when it enacted ERISA." *Id.* at 937 (quoting S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4838, 4871). Here we have the converse

situation. The state period of limitations is longer. Still, deferral should not be confused with enlargement of the federal right. Otherwise, plan administrators and fiduciaries would be subject to varying and inconsistent state regulation in the several jurisdictions in which a plan operates. Plan administrators would not know when repose was granted against claims of discrimination under the ADEA.

Moreover, there are other underlying considerations that support the view. In the words of Senator Dirksen, deferral to state agencies is designed to promote speed, not delay:

[A]t the local level * * ~ many cases are disposed of in a matter of days, and certainly not more than a few weeks. In the case of California, FEPC cases are disposed of in an average of about 5 days. In my own State it is approximately 14 days.

[*Oscar Mayer, supra,* 441 *U.S.* at 757–58, 99 *S.Ct.* at 2072, 60 *L.Ed.*2d at 617 (quoting 110 Cong.Rec. 13087 (1964).]

A well-established body of federal precedent holds that the ADEA's administrative prerequisites are waivable only for good cause and serve the important ADEA statutory goals of prompt notice, opportunity for voluntary resolution, and avoidance of litigation. *See, e.g., McClinton v. Alabama By-Products Corp.,* 743 *F.*2d 1483, 1485 (11th Cir.1984); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 *F.*2d 1195, 1197–99 (5th Cir.1975). ADEA administrative prerequisites may be equated with Title VII's that are "not * * * legal hypertechnicalities [but] basic element[s] of the administrative remedy * * *." *Martin v. Easton Pub. Co.,* 478 *F.Supp.* 796, 797 (E.D.Pa.1979).

This is so because "[s]ection 633(b) envisions a state authority equipped * * * to mediate genuine disputes [and] to attempt to resolve disputes through voluntary compliance * * *." *Eklund v. Lubrizol Corp.,* 529 *F.*2d 247, 249 (6th Cir.1976), *overruled on waiver issue, Wright v. Tennessee,* 628 *F.*2d 949, 953 (6th Cir.1980). Similarly, in the Title VII context, policy considerations "contemplate the possibility of resolving disputes without the antipathies spawned by litigation and of affording the prospective defendant an opportunity to comply

with the law voluntarily or to explain and justify his conduct prior to the expense and publicity of litigation." *Martin v. Easton Pub. Co., supra,* 478 *F.Supp.* at 797.

██ We recognize that a state's age discrimination program need not mirror the federal program in order for the state to qualify as a deferral state under the ADEA. *See, e.g., Brownlow v. Edgcomb Metals Co.,* 573 *F.Supp.* 679, 683 (N.D. Ohio 1983) (Ohio's provision of a parallel judicial remedy would not disqualify it as a deferral state under ADEA). While the NJLAD establishes the Civil Rights Division and authorizes it to remedy violations of the act, *N.J.S.A.* 10:5–6, it also allows claimants to bypass the Division and bring suit directly in Superior Court. *N.J.S.A.* 10:5–13. Still, we believe that invocation of the state judicial remedy after a federal remedy is no longer available does not further the federal program. There are two basic purposes for deferral: (1) to provide rapid and more expeditious disposition of cases, including mediation rather than litigation, and (2) to avoid burdening the federal system. Neither of these federal purposes is fulfilled by reversing the sequence contemplated by the ADEA.

█ We are in the uncomfortable position of trying to predict how a federal court faced with this issue would resolve the question. As noted, we do know that in the converse situation a shortened state period of limitations must yield to the paramountcy of federal law. *Oscar Mayer, supra,* 441 *U.S.* at 759–65, 99 *S.Ct.* at 2073–76, 60 *L.Ed.*2d at 619–21. We believe that, in the interest of uniformity, the principle to be applied in this case is the same. The critical question is not whether the ADEA preempts the NJLAD in a suit brought in state court. The critical question is whether the suit brought under the longer period of limitation, without any state mediative process, furthers the goals of the ADEA so as to escape ERISA preemption. As noted, we think not. We therefore hold that ERISA preempts the plaintiffs' state claim because such preemption does not impair the ADEA.

In so holding, we believe that we are consistent with federal precedent subsequent to *Shaw v. Delta Air Lines, Inc., supra.* In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 *U.S.* ——, 105 *S.Ct.* 2380, 85 *L.Ed.*2d 728 (1985), the Court addressed the insurance exception of section 514(b). It adopted again a straightforward interpretation of the language of the act, noting that it had no choice but to " 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.' " *Id.* at ——, 105 *S.Ct.* at 2389, 85 *L.Ed.*2d at 740 (quoting *Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.,* —— *U.S.* ——, 105 *S.Ct.* 658, 83 *L.Ed.*2d 582 (1985)). To state the obvious, the Court said, the Massachusetts law, which required insurance contracts to include a specified minimum mental health care benefit in health care insurance, was "a law which regulates insurance." 471 *U.S.* at ——, 105 *S.Ct.* at 2389–91, 2399, 85 *L.Ed.*2d at 740–43, 752. It made no difference to the Court that ERISA plan administrators chose to effectuate their plans by purchasing insurance and declined to impose any limitation on the saving clause beyond those Congress imposed on the clause itself. *Id.* at ——, 105 *S.Ct.* at 2390–91, 2392, 85 *L.Ed.*2d at 741–42, 744; *see also Children's Hosp. v. Whitcomb,* 778 *F.*2d 239, 241–42 (5th Cir.1985) (*Metropolitan Life Ins. Co. v. Massachusetts* established controlling interpretation so that state statute concerning self-insured plans was preempted by ERISA; critical aspect was that plan was uninsured).

■ Applying that rationale to this case, we would not give any meaning to the saving clause beyond that which Congress imposed on the clause itself. The clause itself preserves a state law only if its extinction would impair a federal law. *Shaw v. Delta Air Lines, Inc., supra,* 463 *U.S.* at 108–09, 103 *S.Ct.* at 2905–06, 77 *L.Ed.*2d at 508. A key factor is whether the plan administrators are subject to inconsistent state regulation. *See, e.g., Rebaldo v. Cuomo,* 749 *F.*2d 133, 139 (2nd Cir.1984), *cert. denied,* —— *U.S.* ——, 105 *S.Ct.* 2702, 86 *L.Ed.*2d 718 (1985) (New York's version of hospital containment through

Medicaid not superseded by ERISA; state control over hospital rates does not run counter to ERISA's aim of *national uniformity* [2] in plan regulation).

We recognize that New Jersey has a strong policy against discrimination on the basis of age. In fact, our substantive law predates the federal law. We therefore respect the position advanced by the New Jersey Division on Civil Rights that our law against age discrimination is not preempted in these circumstances. Still, we believe that we are bound to yield to the paramount federal interest in uniformity expressed in *Shaw v. Delta Air Lines, supra,* and its sequelae. We therefore hold that ERISA preempts the plaintiffs' untimely claim under the NJLAD.

## IV

Defendant argues that regardless of the resolution of the ERISA preemption issue, plaintiffs' state claims must fail because Congress has insulated from challenge any alleged discrimination resulting from an employer observing "the terms of a bona fide seniority system or any bona fide employee benefit plan." *See* 29 *U.S.C.A.* § 623(f)(2).

The judicial gloss on the provisions of the ADEA was well set forth in *Patterson v. Independent School Dist. No. 709,* 742 *F.* 2d 465 (8th Cir.1984). The court in *Patterson* broke down the requirements for a plan to receive exemption as follows:

---

[2]To achieve that national uniformity, it has been held that ERISA preempts substantive state-law claims based on a former employer's negligent handling of a benefit claim. *Russell v. Massachusetts Mut. Life Ins. Co.,* 722 *F.*2d 482, 487–88 (9th Cir.1983), *rev'd on other grounds,* 473 *U.S.* ——, 105 *S.Ct.* 3085, 87 *L.Ed.*2d 96 (1985) (holding that ERISA creates no private right of action). "ERISA does not supersede state regulation in other areas, (*e.g.* antidiscrimination laws) where the state law is coextensive with federal law." *Id.,* 722 *F.*2d at 487 n. 6 (citing *Shaw v. Delta Air Lines, supra*). *But see Sasso v. Vachris,* 66 *N.Y.*2d 28, 34, 484 *N.E.*2d 1359, 1363, 494 *N.Y.S.*2d 856, 860 (1985) (statute subjecting shareholders of closely-held corporations to personal liability for failure to contribute to pensions not preempted by ERISA because law regulates employer rather than the plan itself).

1. The employer's action must "observe" [*i.e.* conform to] the terms of the plan. * * *

2. The plan must be a *bona fide* plan. This means that it must be a genuine employee benefit plan and not a sham. It must provide substantial benefits for employees.

*       *       *       *       *       *       *       *

3. It must be an *employee benefit* plan; that is, it must provide benefits for employees. * * *

4. [T]here must be a *plan* in order to qualify for exemption under § 623(f)(2).

*       *       *       *       *       *       *       *

5. The plan must *not* be a subterfuge to evade the purposes of the statute to eliminate discrimination based on age. [*Id.* at 466–67 (citations omitted).]

In *United Air Lines, Inc. v. McMann,* 434 *U.S.* 192, 98 *S.Ct.* 444, 54 *L.Ed.*2d 402 (1977), the Supreme Court did not definitively resolve the interpretation of "subterfuge" but pointed out that in the context of the federal Age Discrimination Act the phrase should be given its ordinary meaning as a "scheme, plan, stratagem, or artifice of evasion." *Id.* at 203, 98 *S.Ct.* at 450, 54 *L.Ed.*2d at 413. In that case, however, the Court held as a matter of law that a bona fide plan adopted in 1941 with respect to airline pilots' retirement at age 60 cannot be a subterfuge to evade an act passed 26 years later. *Id.* It has been deduced, however, from the Court's willingness in *United Air Lines, Inc. v. McMann* to uphold involuntary retirements,[3] that "it follows *a fortiori* that a *voluntary* early retirement plan is permissible under § 623(f)(2)." *Patterson v. Independent School Dist. No. 709, supra,* 742 *F.*2d at 467 (emphasis in

---

[3]The main point decided in *United Air Lines* was that an involuntary retirement was permissible if pursuant to a bona fide plan that was not a subterfuge. *United Air Lines, Inc. v. McMann,* 434 *U.S.* 192, 203, 98 *S.Ct.* 444, 450, 54 *L.Ed.*2d 402, 413 (1977). Subsequently, Congress amended the ADEA to make it clear that involuntary retirement within specified ages was not to be exempted from the provisions of the act. *See* 29 *U.S.C.A.* § 623(f)(2) ("It shall not be unlawful * * * to observe the terms of a bona fide seniority system or * * * employee benefit plan * * * except that * * * no such * * * plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual").

original). The point was left open in *Britt v. E.I. Dupont de Nemours & Co.*, 768 *F.*2d 593 (4th Cir.1985), where the court noted that "[w]e do not reach the issue of whether all bona fide voluntary retirement systems are protected under § 623(f)(2) * * *." *Id.* at 595 n. 4.

The question of what constitutes a "bona fide plan" or "subterfuge" in this context has not evoked bright-line answers. *See, e.g., EEOC v. Borden's, Inc.*, 724 *F.*2d 1390, 1397 (9th Cir.1984) (since policy not part of "bona fide" plan, denial of severance pay and layoff income benefits to employees eligible for retirement benefits upon plant closing violates ADEA); *Alford v. City of Lubbock*, 664 *F.*2d 1263, 1271 (5th Cir.), *cert. denied*, 456 *U.S.* 975, 102 *S.Ct.* 2239, 72 *L.Ed.*2d 848 (1982) (involuntary retirement with no pension benefits for plaintiffs who had been hired after their 50th birthdays part of a "bona fide" plan which was not "subterfuge" and thus did not violate ADEA). In view of our jurisdictional resolution, we do not resolve the issue.

For the reasons stated, the judgment of the Appellate Division is reversed and the judgment of the Superior Court, Law Division, dismissing plaintiffs' complaint, is reinstated.

*For reversal* —Chief Justice WILENTZ, and CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN— 7.

*For affirmance* —None.