James WARREN, Plaintiff,

v.

OIL, CHEMICAL AND ATOMIC WORK-ERS, UNION—INDUSTRY PENSION FUND, et al., Defendants.

No. 88–CV–70760–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 29, 1989.

---

Dennis D. James, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, P.C., Detroit, Mich., for plaintiff.

Mark Hypnar, Hayduck, Dawson, Andrews & Hypnar, P.C., Detroit, Mich., for defendant Refiners Transport.

Joseph A. Ritok, Jr., Dykema, Gossett, Detroit, Mich., for defendant OCAW Union Industry Pension Fund.

## MEMORANDUM, OPINION AND ORDER

GADOLA, District Judge.

I.   Granting defendant, Refiners Transport and Terminal Corporation's motion for dismissal under Fed.R.Civ.P. 12(b)(6).

II.  Granting defendant, Oil, Chemical & Atomic Workers, Union—Industry Pension Fund's motion for dismissal under Fed.R.Civ.P. 12(b)(6).

III. Denying plaintiff's motion for summary judgment under Fed.R.Civ.P. 56.

IV.  Denying plaintiff's motion to hold proceedings in abeyance.

On March 1, 1988, plaintiff, James Warren, filed a two-count complaint against defendant, Oil, Chemical and Atomic Workers, Union—Industry Pension Fund (Fund) and defendant, Refiners Transport and Terminal Corporation (Refiners). The complaint stated that Warren, born April 1, 1941, was a participant in OCAW's fund when, on May 6, 1983, he sustained a severe back injury. At the time of his injury, Warren was 42 years of age and employed by defendant Refiners. According to plaintiff, except for a one week period in July, 1983, Warren has been totally disabled since May, 1983.

Pursuant to the plan, the eligibility requirements for a disability pension are as follows:

1.  You become totally and permanently disabled after you attain age 50, but before age 65, and

2.  You have at least fifteen years of pension credit, and

3.  You have at least one year of future service credit, and

4.  You worked in covered employment for at least 375 hours within twenty-four months of the time you became totally and permanently disabled.[1]

At the time of Warren's application for a disability pension, he satisfied all the requirements except that he had not yet attained the age of 50. On February 26, 1985, plaintiff applied to defendant's plan, for a disability pension retroactive to his beginning disability in May, 1983. On April 12, 1985, defendant Fund rendered its final decision rejecting plaintiff's application for a disability pension. The Fund's decision was based on the fact that plaintiff had not reached age 50 before becoming disabled.

Count I of plaintiff's complaint alleged that defendant's failure to pay a disability pension based on age was arbitrary and capricious and violated plaintiff's rights under the Employee Retirement Income Se-

---

1. O.C.A.W., Union–Industry Pension Fund: Regular Plan Description, p. 9.

curity Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA).

Count II of plaintiff's complaint alleged that defendant's refusal to pay a disability pension under the plan, based on age, violated plaintiff's rights under Michigan's Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101 et seq.

On August 22, 1988, defendant Refiners filed a motion and brief to dismiss plaintiff's complaint under Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment. In its brief, Refiners argued that (1) it could not be held liable for the defendant Fund denying plaintiff a disability pension, and (2) plaintiff's alleged cause of action under Michigan's Elliott–Larsen Civil Rights Act was pre-empted by the federal law of ERISA.

According to Refiners, the OCAW Union and Refiners are parties to a collective bargaining agreement. This agreement requires Refiners to contribute a weekly sum to the Fund for each employee. Further, Refiners asserted that this agreement specifically limited its liability to only making the requisite contributions.[2]

The Fund was created on April 14, 1965, by the OCAW International Union and various employers for the purpose of providing benefits to eligible employees. Refiners agreed to be bound by this fund and on March 14, 1967 a Declaration of Trust was entered into by the OCAW Union and Refiners, thereby creating the Fund and setting forth its terms. The trust itself provided that the employer's liability was limited to its obligation to contribute to the Fund.[3]

The plan created a board of trustees to manage and administer the Fund. The trustees are composed of up to ten (10) members, five (5) employer representatives and five (5) union representatives. The trustees are responsible for establishing and administering the plan, interpreting the relevant agreements, as well as the trust, establishing eligibility for benefits and resolving all questions as to benefits.[4] Employers who pay into the plan appoint the employer trustees. However, those trustees need not be employed by or associated with contributing employers.[5] According to Refiners, other than having a voice in appointing the employer trustees, a contributing employers only connection with the Fund is its obligation to contribute.

## I. DEFENDANT REFINERS MOTION FOR DISMISSAL

### A.

■ Refiners first argument is that it cannot be held liable for denying plaintiff's disability benefits because it had no input into decisions made by the Fund. Refiners asserted that an employer is not a proper party to a suit to recover benefits under ERISA, when the employer neither controls nor influences the decisions regarding the awarding of benefits. The U.S. Court of Appeals addressed this issue in *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.1985). In that case, Joyce Gelardi submitted claims for long-term disability benefits through her employer, under its long-term disability benefit plan. Gelardi's employer had hired a separate corporation to administer the plan. Gelardi's benefits were denied and Gelardi appealed the denial to the benefits committee, to which the plan administrator had delegated authority to finally review denied claims. This committee also denied Gelardi's disability claim. Gelardi then brought suit under

---

2. (b) it is understood that the Employer, in making this contribution to the Oil, Chemical and Atomic Worker's Industry Pension Fund, is not guaranteeing any specific amount of retirement benefit, and the Employer's liability shall be limited to making the contributions as specified in Section above. Article III, Section 3, Michigan Drivers' and Shop Employees' Agreement, Refiners Transport & Terminal Corporation—The Oil, Chemical and Atomic Workers International Union—Local No. 7-389, p. 23.

3. Article IV, Section 6; Article VI, Section 7, Agreement & Declaration of Trust, April 14, 1965.

4. Articles III, IV and VI, Agreement & Declaration of Trust, April 14, 1965.

5. Agreement and Declaration of Trust, April 14, 1965, Article I, Section 6, Article III, Section 1.

ERISA against her employer. The Ninth Circuit found that "the only causes of action Gelardi ha[d were] those provided by ERISA." 29 U.S.C. § 1144(a). "ERISA permits suit to recover benefits only against the plan as an entity, §§ 1132(a)(1)(B); 1132(d), and suits for breach of fiduciary duty only against the fiduciary, §§ 1109(a); 1105(a)" *Id.* at 1324.

In the present case it is clear that Refiners is not the plan and therefore can only be held liable if it is found to be a fiduciary of the plan.

ERISA defines "fiduciary" as follows: Except as otherwise provided in subparagraph (B) a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under § 1105(c)(1)(B) of this title. 29 U.S.C. § 1002(21)(A).

Here, the plan established a board of up to ten trustees. The trustees were responsible for administering the Fund, interpreting the provisions of the fund, establishing rules and regulations and determining eligibility for benefits. Refiners contend that its only connection with the Fund was its obligation to make contributions. According to the terms of the plan, the trustees who administer the plan are composed of both union and employer representatives. A majority vote of all trustees both union and employer, is necessary for action. Thus, Refiners asserts that it does not control or influence the fund or its trustees.

Moreover, the fact that an employers own employees served on a committee which reviewed the denial of a claimant's claim did not impose liability on the defendant employer. In *Gelardi, supra,* the court found that even though employees of the defendant's company served on the benefits committee and this committee had a fiduciary responsibility in determining claims, it did not make the employer a fiduciary with respect to the committees' acts. *Id.* at 1325. The court further stated that "ERISA anticipated that employees will serve on fiduciary committees but the statute imposes liability on the employer only when and to the extent that the employer himself exercises the fiduciary responsibility allegedly breached. See 29 U.S.C. §§ 1105(c), 1108(c); 29 C.F.R. § 2560.503–1(g)(1); *id.* § 2509.'75–8 (FR 16)". *Id.* at 1325.

Based upon the holding in *Gelardi, supra,* and the applicable statutes, this court finds that defendant Refiners is not a proper party under Count I of plaintiff's complaint.

## B.

■ Refiners second argument is that ERISA pre-empted plaintiff's claim that the provisions of the pension plan violated Michigan's Elliott–Larsen Civil Rights Act.

The Supreme Court addressed the issue of pre-emption in *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court held that the State of New York's Human Rights Law which forbids discrimination in employee benefit plans on the basis of pregnancy, was pre-empted by ERISA to the extent it prohibited practices that were lawful under federal law. The Supreme Court based its decision on the pre-emptive language contained in ERISA. 29 U.S.C. § 1144(a), pre-empts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. An employee benefit plan includes pension and welfare plans. 29 U.S.C. § 1002(3). Included within ERISA pre-emption are any programs that provide benefits for contingencies such as illness, accident, disability, death or unemployment. 29 U.S.C. § 1002(1). However, "[N]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supercede any law of the United States ... or

any rule or regulation issued under any such law." 29 U.S.C. § 1144(d).

In *Nolan v. Otis Elevator Co.*, 102 N.J. 30, 505 A.2d 580 (1986), the New Jersey Supreme Court reviewed a lawsuit in which plaintiff alleged that their employer's supplemental retirement plan violated the New Jersey law against discrimination. In that case, plaintiffs alleged that a plan of voluntary early retirement benefits offered to supervisory employees age 55 and older with 25 years of service discriminated against younger workers with the same number of years of service. Reversing the Appellate Division of the New Jersey Superior Court, the New Jersey Supreme Court held that plaintiff's action was pre-empted by ERISA because plaintiff's age discrimination claim would have been untimely under the federal provisions of the ADEA. The pre-emption of their claim would not impair the federal law. The New Jersey law, similar to Michigan's Elliott–Larsen Act, allowed a plaintiff to bring a lawsuit alleging age discrimination directly in State court. The plaintiff's claim would have been barred had they attempted to utilize the federal administrative and judicial enforcement scheme because it was not brought within the time period and in the manner specified by federal law under ADEA. The New Jersey Supreme Court found that "the critical question is not whether the ADEA pre-empts the NJLAD in a suit brought in State Court. The critical question is whether the suit brought under the longer period of limitation, without any state mediative process, furthers the goals of the ADEA so as to escape ERISA pre-emption. As noted, we think not. We therefore hold that ERISA pre-empts the plaintiff's State claim because such pre-emption does not impair the ADEA". *Id.* 505 A.2d at 588.

Ultimately, the New Jersey Supreme Court ruled that plaintiff's claim was pre-empted by ERISA because the action was not brought until after expiration of the federal statute of limitations under ADEA, and the states longer period of limitations did not further the goals of ADEA.

Plaintiff argues that the Elliott–Larsen Civil Rights Act is consistent with the substantive provisions of the ADEA, and as the Michigan Department of Civil Rights is a deferral agency of the EEOC, complaints under the ADEA must be deferred for investigation to the Michigan Department of Civil Rights. According to plaintiff, this means that in fact the Elliott–Larsen Civil Rights age discrimination provisions, as they pertain to benefit plans, are integral to the enforcement of the ADEA and as such their pre-emption would modify and impair federal law.

Plaintiff relies on *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454 (6th Cir. 1984) for authority. In *Moore*, the court held that "absent a violation of federal or state law, federal court may not modify a substantive provision of a pension plan." *Supra*, at 456. Further, the court stated "accordingly, an employer is free to choose which benefits to include in a retirement program so long as the stringent requirements of ERISA are met and no other law or policy is violated." *Supra*, at 457.

This court does not disagree with the holding of *Moore*. The Court does, however, find that it is inapplicable because plaintiff cannot first overcome the procedural problem that ERISA pre-empts state law to the extent that the state's limitation period exceeds the 300 day period under ADEA.

This court finds the reasoning of *Shaw v. Delta Airlines, supra,* and *Nolan v. Otis Elevator, supra,* persuasive. Plaintiffs State age discrimination claim under the Elliott–Larsen Civil Rights Act has been pre-empted by ERISA since plaintiff's claim was not filed within the 300 days requisite of the ADEA. As the Court found in *Nolan*, the States longer period of limitations did not further the goal of the ADEA, and therefore it was pre-empted. Hence, plaintiff's second count against Refiners fails based upon the pre-emption provision of ERISA, 29 U.S.C. § 1144(a).

In light of the above reasoning, defendants third argument in its motion for dismissal under Fed.R.Civ.P. 12(b)(6) relating

to the issue of whether the subject pension plan is a subterfuge to evade the purposes of the anti-discrimination law, will not be addressed.

## II. DEFENDANT OCAW, UNION–INDUSTRY PENSION FUND'S MOTION FOR DISMISSAL

On October 7, 1988, defendant, OCAW–Industry Pension Fund filed a motion for dismissal, or in the alternative summary judgment. The defendant, in challenging plaintiff's two-count complaint asserted that Michigan's Elliott–Larsen Act was pre-empted by ERISA, and that ERISA did not prohibit age requirements for eligibility to receive disability retirement benefits. Moreover, defendant alleged that the Fund was adopted in 1965, and was not intended as a subterfuge of the Elliott–Larsen Act or the Federal Age Discrimination in Employment Act. Defendant contends that the pension fund was administered according to its terms and plan documents and therefore the trustees of the pension fund were not acting in an arbitrary and capricious manner when they denied plaintiff's request for disability retirement benefits.

On October 21, 1989, plaintiff filed his answer to the Fund's motion. Plaintiff argued that (1) ERISA does not pre-empt his claim that the provisions of the pension plan violated the Elliott–Larsen Civil Rights Act, and, (2) the pension plan is in fact a part of a system which is a subterfuge to evade the purposes of the ADEA and Elliott–Larsen Civil Rights Act.

On July 12, 1989, defendant, Fund filed a supplemental brief in support of its motion for summary judgment. On August 11, 1989, plaintiff filed his response to defendant's supplemental brief.

Since this court has already determined that ERISA pre-empts the Elliott–Larsen Civil Rights Act, and that plaintiff has not filed a timely ADEA claim, this court must only determine whether the trustee's denial of plaintiff's disability retirement benefits was arbitrary and capricious.

■ 29 U.S.C. § 1104(a)(1)(D) addresses the trustee's fiduciary duties implicit in an employee benefit plan subject to ERISA. It provides in pertinent part as follows:

(a) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this Title or Title IV.

In *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir.1988) the court held that pension plan administrators have broad discretion to decide questions involving eligibility for benefits.

A plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits. This court has held repeatedly that the appropriate determination in reviewing the decisions of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law. (Citations omitted). We have specifically rejected arguments that a de novo review is proper. (Citations omitted).

The arbitrary and capricious standard of review is applied to these cases in order to avoid 'excessive judicial interference with plan administration'. (Citations omitted) As Judge Engel pointed out ... this deferential standard is applied 'in the interests of efficient pension administration' *Cook v. Pension Plan for Salaried Employees*, 801 F.2d 865, 871 (6th Cir. 1986).

Each application for benefits implicates the rights of other members of a plan and the plan administrator reviews each case from this perspective. By upholding the decisions of an administrator that are rational in light of the plan's provisions and thus not arbitrary or capricious, the courts contribute to consistency and fairness in plan administration. *Id.* at 267.

From the holding in *Daniel, supra*, this court must examine the terms of the OCAW, Union–Industry Pension Fund.

At page nine of the pension plan, disability pensions are discussed as follows:

As an employee you are eligible for the disability pension if you meet these four requirements:

1. You become totally and permanently disabled after you attain age 50 but before age 65, and

2. You have at least 25 years of pension credit, and

3. You have at least 1 year of future service credit, and

4. You worked in covered employment for at least 375 hours within twenty-four months of the time your became totally and permanently disabled.

Neither party in this action contends that plaintiff is not disabled. The central question is whether the disability pension requirement that a disabled employee be at least age 50, is a violation of Michigan's Elliott–Larsen Civil Rights Act, the ADEA or is part of an arbitrary and capricious decision by the pension plan administrators or trustees. Since, this court decided that plaintiff's claim for violation of Michigan's Elliott–Larsen Civil Rights Act is pre-empted by ERISA, and that no timely ADEA claim was filed, the only remaining claim is whether the trustees or plan administrators acted in an arbitrary and capricious manner in denying plaintiff a disability pension.

In examining 29 U.S.C. § 1104(a)(1)(D) the administrators of the plan have not breached a fiduciary duty as long as they interpret and render decisions based 'in accordance with the documents and instruments governing the plan'.

From the facts of the present case, Warren was 42 years of age when he was rendered totally disabled. A clear reading of the plan indicates that in order for plaintiff to collect disability pension benefits, he must have attained age 50 at the time of his disability. Therefore, this court is compelled to find that the trustees or administrators of the plan did not act in an arbitrary and capricious manner in interpreting and following the documents and instruments governing the plan.

As stated in *Daniel, supra,* this "arbitrary and capricious standard of review is applied to these cases in order to avoid 'excessive judicial interference with plan administration'". *Id.* at 267. For these reasons, this court finds that the trustees or administrators of the plan did not act in an arbitrary or capricious manner.

In plaintiff's memorandum in support of its answer to defendant's motion for dismissal, plaintiff argued the plan was in fact a subterfuge to evade the purposes of the ADEA and Elliott–Larsen Civil Rights Act. This court notes that it did not address the subterfuge issue because ERISA pre-empted the Elliott–Larsen Civil Rights Act, and that plaintiff had not filed a timely ADEA claim. Therefore, the issue of subterfuge was not before the court.

Additionally, plaintiff relied upon the Sixth Circuit's decision in *Betts v. Hamilton County Board of Mental Retardation,* 802 F.2d 456 (6th Cir.1986). However, as pointed out in defendant's July 12, 1989 supplemental brief in support of its motion for dismissal, the U.S. Supreme Court reversed the Sixth Circuit's decision in *Betts* in *Public Employees Ret. Sys. of Ohio v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989).

This court also notes that even if it entertained plaintiff's arguments for subterfuge under the Elliott–Larsen Civil Rights Act, or the ADEA, its claim would fail. As stated by the U.S. Supreme Court in *Public Employees Ret. Sys. of Ohio, supra:*

Instead, we held that the term 'subterfuge' must be given its ordinary meaning as 'a scheme, plan, stratagem or artifice of evasion' (citation omitted). Viewed in this light, the retirement plan at issue could not possibly be characterized as a subterfuge to evade the purposes of the Act, since [the pension plan] had been established in 1941, long before the Act was enacted. As we observed, *"[to] spell out an intent in 1941 to evade a statutory requirement not enacted until 1967 attributes, at the very least, a remarkable prescience to the employer."* (Emphasis added).

Similarly, in the present case, the OCAW–Union Industry Pension Fund came into existence in 1965, two years prior to the ADEA of 1967, and prior to Michigan's Elliott–Larsen Civil Rights Act. Therefore, as the Supreme Court stated in *Public Employees Ret. Sys. of Ohio, supra,* there could have been no viable argument of subterfuge.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On October 7, 1988, defendant filed a motion for summary judgment pursuant to rule 56(b) of the Federal Rules of Civil Procedure. On October 27, 1988, defendant OCAW, Union–Industry Pension Fund filed its answer to plaintiff's motion for summary judgment. Defendant, Refiners, filed its response to plaintiff's motion for summary judgment on October 28, 1988.

Based upon this court's decision to grant defendant's Refiners and defendant's OCAW's, Union–Industry Pension Fund's motions for dismissal, plaintiffs motion for summary judgment is moot and therefore denied.

### IV. PLAINTIFF'S MOTION TO HOLD PROCEEDINGS IN ABEYANCE

On August 11, 1989, plaintiff filed a motion to hold the proceedings in abeyance. On August 31, 1989, OCAW, Union–Industry Pension Fund, filed its response to plaintiff's motion to hold the proceedings in abeyance. Defendant, Refiners, filed its reply to the plaintiff's motion on September 1, 1989.

Plaintiff argues that legislation has been introduced into Congress after the U.S. Supreme Court's recent decision in *Public Employees Ret. Sys. of Ohio v. Betts, supra.* Plaintiff argues that this court should hold this case in abeyance pending action on this proposed legislation in anticipation that Congress will amend the ADEA to clarify the prohibition against discrimination and employee benefit plans. The defendants object to holding this case in abeyance arguing that it is at best speculative as to what action will be taken by Congress.

While this court recognizes and appreciates the diligence and perseverance displayed by plaintiff's counsel in advocating his client's interests, this court is compelled to deny plaintiff's motion to hold the case in abeyance.

ACCORDINGLY, IT IS HEREBY ORDERED that defendant, Refiners Transport and Terminal Corporation's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is hereby GRANTED;

IT IS FURTHER ORDERED that defendant, Oil, Chemical & Atomic Workers, Union—Industry Pension Fund's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is hereby GRANTED;

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is moot and therefore DENIED;

IT IS FURTHER ORDERED that plaintiff's motion to hold the proceeding in abeyance is hereby DENIED.