**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1027n.06

**No. 11-1824**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sept 25, 2012
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN LOFFREDO, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DAIMLER AG, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| STATE STREET BANK AND TRUST | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| DIETER ZETSCHE, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| THOMAS LASORDA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MOORE, SUTTON and STRANCH, Circuit Judges.

SUTTON, J., delivered the opinion of the court except for Section II through II.A.

STRANCH, J., joined in all parts except Section II through II.A and delivered a separate concurring

opinion (p. 23). MOORE, J., concurred in the judgment and delivered a separate opinion (pp.

17–22), in which STRANCH, J., joined and which constitutes the opinion of the court.

No. 11-1824
*Loffredo v. Daimler AG*

John Loffredo and his co-plaintiffs are former Chrysler executives. When the company went bankrupt in 2009, they lost most, in some cases all, of their benefits under its Supplemental Executive Retirement Plan. Claiming that the Plan would have survived the bankruptcy had it been properly managed, they sued Chrysler's former parent company, several of Chrysler's (other) former executives and the trustee responsible for managing the retirement funds. The district court dismissed the claims, holding that the federal Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*., preempted plaintiffs' state-law claims: age discrimination, breach of fiduciary duty, promissory estoppel and silent fraud. We affirm the dismissal of all of the claims, save the age-discrimination claim.

I.

At various times before 2007, John Loffredo and other Chrysler executives participated in the company's Supplemental Executive Retirement Plan. To facilitate benefit payments, Chrysler established a trust, held by State Street Bank and Trust Company as trustee, in which it deposited assets intended to cover the Plan benefits. The trust document provided that Chrysler could use trust funds to pay benefits under the Plan and related expenses, except that "[i]n the event of Insolvency of [Chrysler], all money or other property contributed to the Trust . . . shall be available to pay the claims of any general creditor" of Chrysler. R. 25-3 at 8, PageID 290. The Plan also authorized Chrysler to buy out an employee's right to benefits by creating an annuity paying an equivalent stream of income.

- 2 -

In 1998, Chrysler discussed a merger with Daimler. When some Chrysler executives expressed concern over the merger's implications for their supplemental benefits, Daimler's Chief Financial Officer told them that "it has always been the understanding that as long as [Daimler] is a majority stakeholder of any affiliate, [Daimler] internally sees to it that the affiliate has sufficient assets to meet its obligations with a third party." R. 31-2 at 9, PageID 462. Plaintiffs remained employed with Chrysler. The companies merged later that year, producing a new company, Daimler Chrysler AG, in which Chrysler became a wholly owned subsidiary.

Jump forward a few years. By 2005 or 2006, plaintiffs claim, the defendants knew Chrysler's financial situation was precarious and that the company might need to file for bankruptcy. Based on this knowledge, the defendants allegedly used trust assets to purchase annuities for some active Chrysler executives, as well as some selected retirees (not including the plaintiffs). This securitization protected the selected beneficiaries from any future shortfalls in the trust account, while the remaining participants continued to depend on the trust for their monthly benefits checks. The defendants allegedly hid the true state of Chrysler's finances from the remaining trust beneficiaries, preventing them from cashing in their own benefits for annuities.

In 2007, Daimler Chrysler AG sold its majority interest in Chrysler to Cerberus Capital Management, L.P. Chrysler eventually became insolvent and filed for bankruptcy in 2009. Consistent with the terms of the Plan, the remaining assets of the Plan became part of Chrysler's bankruptcy estate. Had the Plan been fully funded, plaintiffs allege, the federal government (which

participated in the bankruptcy proceedings) would have ensured the Plan survived the bankruptcy intact. The Plan's unsecured beneficiaries instead lost most of their benefits.

The plaintiffs (on behalf of a class) sued Daimler, Cerberus and State Street Bank, as well as Dieter Zetsche and Thomas LaSorda, both of whom served as Chrysler executives before the sale to Cerberus, in state court. They alleged state-law claims of promissory estoppel, breach of fiduciary duty, age discrimination, fraud and statutory conversion. Because the plaintiffs did not contest the dismissal of their conversion claim against State Street, we will not address that claim.

The defendants removed the case to federal court. Once there, the plaintiffs agreed to dismiss Cerberus. *Loffredo v. Cerberus Capital Mgt.*, No. 10-14214, ECF #17 (E.D. Mich. Feb. 14, 2011). The remaining defendants filed motions to dismiss, arguing that ERISA preempted the state-law claims. The district court granted the motions.

II.

ERISA has competing objectives: to enforce employers' retirement-related promises without discouraging employers from making the promises in the first place. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Striking a balance, Congress created a robust enforcement regime under which employees could vindicate these federal rights and a robust preemption regime to protect employers from a patchwork of additional state-by-state requirements. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

Congress also recognized that the optimal equilibrium between protection and promotion falls in different places for different groups of workers. While some workers need the protection of expansive fiduciary duties, others do not, including some management executives. *See Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007). For the latter group, Congress created a retirement-plan option that "cuts a swath through [ERISA's] regulatory thicket," removing many of the employer requirements, including its fiduciary duty and minimum funding obligations. *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 43 (1st Cir. 2008); *see also Bakri*, 473 F.3d at 678. Known as "top-hat" plans, these retirement plans are unfunded, meaning the employer may not set them up in a separate account insulated from the employer's creditors in the case of insolvency and meaning that beneficiaries are not taxed until they receive the benefits. *See In re IT Group, Inc.*, 448 F.3d 661, 665 (3d Cir. 2006).

The parties agree that Chrysler's Supplemental Executive Retirement Plan is a top-hat plan. As such, many of ERISA's otherwise-applicable protections (and rights of action) do not apply, which explains why plaintiffs have largely framed their claims under state law. A threshold question is whether Congress's less-intrusive regulation of top-hat plans permits a *more*-intrusive system of *state* regulation. The answer is no. ERISA has one express-preemption provision, *see* 29 U.S.C. § 1144(a), and (with some exceptions not relevant here) it applies equally to all ERISA benefit plans, preempting all state-law claims that "relate to any employee benefit plan," *id*. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants . . . were free to obtain remedies under

state law that Congress rejected in ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 54. "Preemption thus applies to every plan covered by ERISA, which necessarily includes top hat plans." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008); *see also Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002); *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 604, 606 (7th Cir. 1999). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc.*, 542 U.S. at 209; *see also Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (holding that ERISA preempts state laws that "provide alternate enforcement mechanisms").

ERISA contains just one express-preemption provision, § 1144, but the courts have created a complete-preemption doctrine to go with it. Complete preemption is "a doctrine only a judge could love," *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992), and one only judges could confusingly name. More productively thought of as a jurisdictional rather than a preemptive rule, complete preemption amounts to an exception to the well-pleaded complaint rule that converts a state-law claim that could have been brought under § 1132 into a federal claim, *Aetna Health Inc.*, 542 U.S. at 209, and makes the recharacterized claims removable to federal court, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). Section 1132 creates ERISA's civil action, permitting claims by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Complete preemption applies when a plaintiff

dresses up a claim for benefits under a pension plan in state-law clothing because ERISA has "so fill[ed] every nook and cranny" of the area "that it is not possible to frame a complaint under state law." *Bartholet*, 953 F.2d at 1075. Put another way, "a complaint reciting that the claim depends on the common law of contracts is *really* based on [ERISA] if the contract in question is a pension plan. Congress has blotted out (almost) all state law on the subject of pensions, so a complaint about pensions rests on federal law no matter what label its author attaches." *Id.*

The distinction between the two doctrines comes up most frequently in removal cases, where the jurisdictional import of "complete preemption" applies. Here, however, we face no such problem, as the federal courts have jurisdiction over the case under another statute, the Class Action Fairness Act (CAFA). In this instance, all of plaintiffs' claims, save the age-discrimination claim, conflict with ERISA in one way or another.

A.

*Fiduciary Duty.* When Congress exempts a plan from ERISA's fiduciary-duty requirements, as it did with top-hat plans, plaintiffs may not use state law to put back in what Congress has taken out. *See Pilot Life Ins. Co.*, 481 U.S. at 54. Even if the facts of a given case make "an ERISA action [unavailable] against particular defendants, the relief provided by ERISA is the only relief available." *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999). No one disputes that the plaintiffs are ERISA beneficiaries and may sue fiduciaries for money damages and non-fiduciaries for equitable relief under ERISA's civil enforcement scheme. *See* 29 U.S.C. § 1132(a). The only question is

whether plaintiffs may sue *non-fiduciaries* for money damages—whether state law may create an alternative to the civil enforcement mechanisms ERISA already provides. *Penny/Ohlmann/Nieman, Inc.*, 399 F.3d at 698. It may not: ERISA preempts the plaintiffs' claims for money damages against the non-fiduciary defendants.

Our decision in *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007), says nothing to the contrary. Thurman sued for losses allegedly caused by misrepresentations that pre-dated his participation in the ERISA plan. Because he fell outside the class of people covered by ERISA, federal law did not preempt his state-law misrepresentation claim. *Id.* at 861. The same is not true here.

Judge Moore, joined by Judge Stranch, would reject this claim under the doctrine of complete preemption. The distinction between complete and express preemption matters most when it has jurisdictional consequences—when, for example, complete preemption creates federal jurisdiction—and in some instances it may affect the ease with which a complaint may be amended or indeed whether it needs to be amended. No such issues arise here. We have jurisdiction under CAFA, eliminating that potential problem. And it would be futile to give plaintiffs an opportunity to re-file an ERISA claim when the federal statute exempts top-hat plans from its coverage. As our jurisdiction is certain and as amending the complaint would be futile, I see no need for the court to resolve whether, as a matter of nomenclature, it is more appropriate to say that the claims are completely preempted under § 1132 or expressly preempted under § 1144. Judge Moore makes a plausible case for one tag line: complete preemption. But there is a plausible case to be made for

the other: Express preemption is the label we gave a similar claim in *PONI*, and it seems a bit awkward (though that may not be saying much when it comes to "complete preemption") to characterize a state-law claim as a federal claim in disguise when federal law expressly precludes such a claim, precludes in other words the disguised *and* undisguised version of the claim.

B.

*Fraud*. The executives also allege that the defendants breached "a legal and equitable duty to Plaintiffs, as participants in the . . . Trust, to inform them of the precarious financial position of" Chrysler. R. 31-2 at 20, PageID 473. But a state law that gives ERISA plan participants rights to information by virtue of their status as participants in the plan conflicts with ERISA's existing disclosure requirements and enforcement mechanisms. *Aetna Health Inc.*, 542 U.S. at 209. Section 1144(a) therefore expressly preempts these claims. *See id.*

Plaintiffs insist that the claim escapes preemption because it relies on an independent state-law duty to disclose that goes beyond the ERISA relationship. But state law imposes no such generalized duty. Under Michigan law, this type of claim, known as "silent fraud," requires selective concealment that creates "a representation that what *is* disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party." *Wolfe v. A.E. Kusterer & Co.*, 257 N.W. 729, 730 (Mich. 1934) (emphasis added). "[T]he touchstone of liability for . . . 'silent fraud' is that *some* form of representation has been made and that it was or proved to be false." *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 38 (Mich. Ct. App. 1998). In the absence

of any allegation that the defendants made deceptively partial disclosures (as opposed to remaining completely silent), state law imposes no legal duty independent of the Plan relationship.

The executives invoke two cases to support a broader duty to disclose, but neither one does the trick. In *Clement-Rowe v. Michigan Health Care Corp.*, the court held that a company may not "avoid liability after omitting to disclose, *when asked*, known economic instability which later leads to economically-based layoffs." 538 N.W.2d 20, 24 (Mich. Ct. App. 1995) (per curiam) (emphasis added). The executives do not claim they asked about Chrysler's finances, making *Clement-Rowe*'s duty to disclose irrelevant. The other case—an unpublished federal district court opinion—draws on *Clement-Rowe* but does not discuss the "when asked" proviso. *See Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, No. 1:97-CV-665, 1998 U.S. Dist. LEXIS 10993, at \*22 (W.D. Mich. June 9, 1998).

C.

*Promissory estoppel.* The executives also filed a promissory-estoppel claim stemming from Daimler's alleged 1998 commitment to "see[] to it that [Chrysler] has sufficient assets to meet its obligations." R. 32-1 at 9, PageID 462. There is some debate whether employees may bring promissory-estoppel claims directly under ERISA itself, *see Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010), but we need not resolve the point. Either way, the executives face a problem. If ERISA permits such claims directly under the statute, the state-law promissory estoppel claims impermissibly "duplicate[]" ERISA's enforcement mechanisms, and

§ 1132 completely preempts them—and any effort at amendment would be futile. *Aetna Health Inc.*, 542 U.S. at 209. If ERISA does not permit promissory-estoppel claims, the state-law claims amount to an impermissible alternative to ERISA's reticulated enforcement regime, and § 1144 expressly preempts them. *Penny/Ohlman/Nieman, Inc.*, 399 F.3d at 698; *see also Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1300 (6th Cir. 1991) (noting that modification of plan terms by promissory estoppel could jeopardize other participants' benefits).

One other problem defeats this theory. Even if the claim could survive preemption (or be reframed as an ERISA claim), the executives did not adequately plead it. Promissory estoppel presupposes a broken promise. *See Gore v. Flagstar Bank, FSB*, 711 N.W.2d 330, 333 (Mich. 2006) (asking whether "injustice can be avoided only by performance of the promise"); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991). But the executives allege no such thing. They locate Daimler's promise in its statement that "as long as [Daimler] is a majority stakeholder of any affiliate, [Daimler] internally sees to it that the affiliate has sufficient assets to meet its obligations with a third party." R. 31-2 at 9, PageID 462. Yet, in discussing Daimler's breach, they reframe the obligation, saying the company failed "to make certain that [Chrysler] had sufficient assets to purchase annuities or otherwise securitize the retirement benefits of the retired employees." *Id.* at 13. Ensuring *internally* that an affiliate has sufficient assets to meet its obligations is distinct from securitizing those obligations *externally*. In the context of an unfunded top-hat plan—designed *not* to secure benefits for beneficiaries, *see Comrie v. IPSCO, Inc.*, 636 F.3d 839, 840 (7th Cir. 2011)—that difference is significant. Because they do not allege Daimler failed to do what it said

it would do, only that it failed to do more than it said it would do, the executives fail to state a cognizable claim for promissory estoppel for this reason as well.

D.

*Age discrimination.* The executives' age-discrimination claim fares better. ERISA's saving clause says that nothing in the statute "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). The clause preserves other federal laws *and some state laws* that "provide[] a means of enforcing" a federal law's commands. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102 (1983).

*Shaw* illustrates the some-state-laws point. It held that ERISA does not preempt state-law discrimination claims arising from conduct that is also illegal under Title VII. The Court reasoned that Title VII relies on state laws to enforce the federal law and that disallowing the parallel state claims would "impair" federal law in violation of § 1144(d). *Id.*

Like Title VII, the Age Discrimination in Employment Act uses state-law counterparts to bolster enforcement of the federal law. *See* 29 U.S.C. § 633(b). Section 1144(d) thus preserves state-law claims from preemption to the extent they mirror ADEA claims. *See Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 100 (2d Cir. 1999); *Hurlic v. S. Cal. Gas Co.*, 539 F.3d 1024, 1036 (9th Cir. 2008). The plaintiffs' age-discrimination claim falls into this category. They argue that securitizing the retirement benefits of active employees but not most retired employees had a disparate impact on older beneficiaries. The ADEA covers such claims. *See Smith v. City of*

*Jackson*, 544 U.S. 228, 243 (2005). Nor is the claim an implausible one: The securitized beneficiaries on average were younger than the retirees whose benefits were not secured.

The defendants offer three counter-arguments, all unavailing at the pleading stage. First, they point out that the ADEA gives employers an affirmative defense if the disparate impact results from reliance on "reasonable factors other than age." *See* 29 U.S.C. § 623(f)(1); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87 (2008). True enough. But, as an affirmative defense not anticipated in the pleadings, it provides no basis for relief on a motion to dismiss, as opposed to a motion for summary judgment. *See Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012).

Second, State Street argues that it cannot be subject to an employment-discrimination claim because it did not employ the plaintiffs. But Michigan and federal law extend liability to an employer's "agent," *see* Mich. Comp. Laws § 37.2201(a); 29 U.S.C. § 630(b), and the complaint alleges State Street acted as Chrysler's agent.

Third, defendants claim that Michigan's three-year statute of limitations bars these claims. *See* Mich. Comp. Laws § 600.5805(1), (10). Under Michigan law, a claim "accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results. *Id.* § 600.5827. The Michigan Supreme Court has read this statute to require an "*actionable* wrong," meaning that all of the elements of the claim must be present before the limitations period begins to run. *See Connelly v. Paul Ruddy's Equip. Repair & Serv. Co.*, 200 N.W.2d 70, 72–73 (Mich.

1972).  One element of a disparate-impact claim is an adverse impact, which is to say an injury.  *See*

*Donnelly v. R.I. Bd. of Governors for Higher Educ.*, 110 F.3d 2, 5 n.2 (1st Cir. 1997); *Coe v. Yellow*

*Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981).  Yet this impact/injury did not become

actionably adverse here until it was clear that the treatment of the active employees—buying them

taxable annuities in exchange for their right to continue receiving payments from the trust—was

more favorable than the treatment of the retirees because the trust lacked funds to pay out the

remaining claims.  The complaint suggests this may have occurred as late as 2009, making the

lawsuit timely, at least according to the pleadings.  The age-discrimination claim is remanded for

further proceedings consistent with this opinion.


III.


*ERISA claims.*  Having decided that ERISA preempts three of the plaintiffs' four state-law

claims, we must consider whether the district court erred in denying plaintiffs leave to amend their

complaint to raise new ERISA-based claims.  The plaintiffs properly presented just one of those

claims to the district court: that they are entitled to equitable restitution and an accounting under 29

U.S.C. § 1132(a)(3), which authorizes "other appropriate equitable relief."


To plead claims for equitable relief, however, the plaintiffs would have to allege either that

the defendants currently (and improperly) possess the assets dispersed from the trust or that they

retain profits generated from that property.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534

U.S. 204, 214 (2002) ("[F]or restitution to lie in equity, the action generally must seek not to impose

personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."); *id.* at 214 n.2 (discussing equitable accounting). The plaintiffs never alleged any such facts, and in deciding whether to grant leave to amend the district court was not required to assume that the plaintiffs would allege new facts to support new claims. *Cf. Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006) ("[T]his court should not assume facts that were not pled.").

Before the district court, the plaintiffs also argued they could bring claims under 29 U.S.C. § 1132(a)(1)(B) "to recover the benefits which they have lost as a . . . result of Defendants' conduct in violation of the terms of the" Plan and trust documents. R. 31 at 33, PageID 436. Yet they did not allege conduct of the defendants that violated provisions of any trust document, and as a result the district court denied their motion to amend. On appeal, the plaintiffs for the first time point to particular conduct and particular contractual obligations to support their claim of breach. But because the plaintiffs did not present these claims to the district court, they cannot do so for the first time on appeal. *See McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002).

IV.

*Dismissal of claims against Zetsche.* One of the defendants, Dieter Zetsche, is a citizen and resident of Germany. The parties stipulated in November 2010 that the plaintiffs failed to serve him with the complaint. When the district court, in June 2011, addressed the other defendants' motions to dismiss, it noted that the claims against Zetsche were identical to the claims against LaSorda but

that Zetsche had not filed a motion to dismiss because he had not been served. The district court gave the plaintiffs ten days to show cause why Zetsche should not be dismissed from the case on the same merits-based grounds as LaSorda. The plaintiffs did not respond, and the district court dismissed their claims against Zetsche in July 2011. Due to their failure to object to Zetsche's dismissal in the district court, they have no right to complain about the dismissal now (although, as noted, the district court should not have dismissed the age-discrimination claim). *See McFarland*, 307 F.3d at 407.

V.

For these reasons, we reverse the district court's dismissal of the state-law age-discrimination claim, affirm its dismissal of the other issues and remand.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment**. To paraphrase Tolstoy, each ERISA preemption case is complicated in its own way. Although I agree that Loffredo's state-law claims for breach of fiduciary duty and silent fraud are preempted, his age-discrimination claim is not preempted, and his promissory-estoppel claim was not adequately pleaded, I write separately in hopes of providing both a degree of clarity to at least one aspect of this tangled web and a more thorough analysis of the preemption issue as it relates to the case before us.

ERISA can preempt state-law claims in two ways: complete preemption under 29 U.S.C. § 1132(a) and express preemption under 29 U.S.C. § 1144. Normally, the consequence of the former is that the suit containing those claims can be removed to federal court; a completely preempted state-law claim "arises under" federal law and thus vests the district court with federal-question jurisdiction. *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001). By contrast, express preemption under § 1144 is a defense; it is grounds for dismissal, but not for removal. *See id.* at 614–15; *Warner v. Ford Motor Co.*, 46 F.3d 531, 533–35 (6th Cir. 1995) (en banc). Our prior ERISA preemption cases have not always clearly differentiated between the two concepts, but we should take care to do so in the future.

In addition to its jurisdictional impact, complete preemption of a state-law claim by ERISA also affects how the federal court should treat that claim, regardless of how it arrived in federal court. Because state-law claims that are completely preempted are, in fact, federal claims, the court should treat them as such, evaluating them as ERISA claims and, unless doing so would be futile, granting the plaintiff leave to amend the complaint to re-plead those claims to conform with ERISA. The

question in such situations is whether the plaintiff *could* state an ERISA claim based on the allegations underlying his ostensible state-law claim, not whether, looking at the complaint as pleaded, he *has* done so; a plaintiff not expecting to find himself with an ERISA claim may not have pleaded every known fact that could support such a claim (such as identifying specific Plan terms that the defendants violated in support of an § 1132(a)(1)(B) claim), and should thus have an opportunity to do so. The plaintiff could also seek to amend the complaint with new ERISA claims, subject to Federal Rule of Civil Procedure 15. By contrast, state-law claims that are expressly preempted under § 1144 should be dismissed with prejudice. *See Briscoe v. Fine*, 444 F.3d 478, 501 (6th Cir. 2006). The difference in treatment stems from the fact that completely preempted claims "fall within the scope" of ERISA's civil-enforcement regime, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 221 (2004), and expressly preempted claims interfere with that regime.

Daimler argued before the district court that Loffredo's state-law claims should be dismissed as completely preempted. The district court correctly recognized that this argument misunderstands the doctrine of complete preemption. Complete preemption under § 1132(a) is not grounds for dismissal. *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008) ("Complete preemption [is] really a jurisdictional rather than a preemption doctrine . . . ."); 13D Charles Alan Wright, Arthur Miller, Edward Cooper & Richard Freer, Federal Practice & Procedure § 3566 at 297 (3d ed. 2008) ("'Complete preemption' . . . is actually a doctrine of subject matter jurisdiction."). If an ostensible state-law claim is in fact an ERISA claim, it cannot be dismissed as preempted by ERISA; that is, ERISA cannot preempt an

ERISA claim. *See Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 816–17 (S.D. Ohio 2003). A state-law claim that is not completely preempted can nonetheless be expressly preempted, and thus subject to dismissal, under § 1144. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860–61 (6th Cir. 2007).

Just as the results of the two types of preemption are different, so are the analyses. A plaintiff's state-law claim is completely preempted "if [he], at some point in time, could have brought his claim under ERISA" and "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (describing complete preemption under ERISA as a "two-part test"); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (same); *Franciscan Skemp Healthcare*, 538 F.3d at 597 (same). A plaintiff "could have brought" a state-law claim under ERISA if he or she has standing to bring such a claim and if the claim can be construed as a colorable claim for recovery under ERISA. *See Montefiore Med. Ctr.*, 642 F.3d at 328 & n.7. When making this determination, we should consider the substance of the state-law claim, not its label. *See Davila*, 542 U.S. at 214; *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002).

A claim is expressly preempted, and thus subject to dismissal, if it is based on a state law that "may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State-law claims "relate to" ERISA plans for § 1144 preemption purposes if they "'(1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind

employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself'" or otherwise seek a remedy that is "primarily plan-related." *Thurman*, 484 F.3d at 861 (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* (*PONI*), 399 F.3d 692, 698 (6th Cir. 2005)) (internal quotation marks omitted).

Applying these standards to the case before us reveals this ERISA preemption case's own brand of complication. The allegations underlying Loffredo's state-law breach-of-fiduciary-duty claim—misuse of funds, self-dealing, actions not in participants' best interests—appear to be the precise type of claim that "could have [been] brought" under § 1132(a)(2). *Davila*, 542 U.S. at 210; *see also Smith v. Provident Bank*, 170 F.3d 609, 613–14 (6th Cir. 1999) (applying the doctrine of complete preemption to § 1132(a)(2)); 29 U.S.C. §§ 1104, 1109 (describing fiduciary duties under ERISA). As a beneficiary of the Plan, Loffredo unquestionably would have standing to bring such a claim. The twist is that ERISA's fiduciary-responsibility provisions do not apply to top-hat plans. *See* 29 U.S.C. § 1101(a)(1). Nonetheless, we have held that "it is the nature of the claim—breach of fiduciary duty—that determines whether ERISA applies, not whether the claim will succeed." *Smith*, 170 F.3d at 613. To ensure uniformity and consistency, Congress intended fiduciary-duty claims to proceed through the system established by ERISA, subject to the limitations that ERISA imposes. As to *Davila*'s second prong, Daimler's decision to purchase annuities selectively does not implicate any duty independent of ERISA; Loffredo does not contend otherwise. Unlike Judge

Sutton, I believe that this claim was completely preempted.[1] This claim clearly cannot succeed as an § 1132(a)(2) claim, however, so leave to amend would be futile; dismissal would be proper for failure to state a claim under ERISA, not because it is preempted by ERISA.[2]

Loffredo's silent-fraud claim alleges a failure to disclose information about Chrysler's financial situation. Because ERISA does not provide a cause of action for failure to disclose such information, Loffredo could not have brought this claim under ERISA. Although it is not a direct claim for benefits, the resulting harm from the alleged fraud was that Loffredo did not take steps to access those benefits prior to Chrysler's bankruptcy. By seeking to hold the defendants liable for conduct that allegedly resulted in lost benefits without challenging the denial of benefits itself, Loffredo is attempting to create an "alternate enforcement mechanism" to ERISA's vehicle for recovery of benefits such that the claim is expressly preempted under § 1144. *Thurman*, 484 F.3d at 861 (quoting *PONI*, 399 F.3d at 698).

Finally, Loffredo's failure to plead a claim for promissory estoppel renders unnecessary any preemption analysis as to that claim. I note only that, as described above, different consequences follow from preemption under § 1132(a) or § 1144, so we cannot simply state that a state-law claim

---

[1]Judge Sutton phrases the question broadly as whether a plaintiff can sue a non-fiduciary for money damages under state law, but the more precise question is whether the plaintiff can sue individuals or entities for breach of fiduciary duty under state law when ERISA does not impose fiduciary duties upon them.

[2]Even construing this claim somewhat awkwardly as an § 1132(a)(1)(B) claim, in which the defendants denied Loffredo benefits or violated the Plan by failing to purchase an annuity for him, granting leave to replead the claim as such appears futile. As the district court concluded, the Plan authorizes the administrators to purchase annuities on a selective basis.

is preempted either way and be done with it.

As the experience of courts around the nation, including this court and even the Supreme Court, demonstrates, clarity may be a virtue that simply does not "relate to" ERISA preemption. With these observations, I concur in the judgment remanding the age-discrimination claims and otherwise affirming the judgment of the district court.

**JANE B. STRANCH, Circuit Judge.** I concur in Judge Sutton's opinion with the exception of Sections II. through the conclusion of Section II.A. I join Section II.C. based on the reasoning that the executives did not adequately plead promissory estoppel. I concur fully in Judge Moore's opinion.