NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0596n.06

Case No. 15-1443

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 08, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN LOFFREDO, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DAIMLER AG; STATE STREET BANK & | ) | MICHIGAN |
| TRUST COMPANY, a Massachusetts Trust | ) | |
| Company; DIETER ZETSCHE, an individual; | ) | |
| THOMAS LASORDA, an individual, | ) | |
| | | |
| Defendants-Appellees. | | |

**BEFORE: MOORE, SUTTON, and STRANCH, Circuit Judges.**

**STRANCH, Circuit Judge.** John Loffredo and his co-plaintiffs are former executives of

Chrysler Corporation who lost retirement benefits when the company went bankrupt in 2009.

Plaintiffs subsequently brought suit in Michigan state court, raising several state-law claims

against Daimler AG, Chrysler's former parent company; State Street Bank and Trust Company,

the trustee that governed Plaintiffs' retirement plan funds; and Thomas LaSorda, a member of

Chrysler's Board of Directors. After Defendants removed the action to federal court, the district

court dismissed all of Plaintiffs' claims as preempted by the Employment Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1001.

In 2012, we reversed the dismissal of Plaintiffs' state-law age-discrimination claim but

affirmed the dismissal of their remaining claims. On remand, Plaintiffs sought to file a first

amended complaint to add ERISA and other claims. The district court granted the motion in part, allowing Plaintiffs to file a complaint asserting only a claim for disparate treatment under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws Ann. § 37.2202(1)(a). The district court then determined that Plaintiffs' age-discrimination claim was preempted by ERISA because it was brought outside the statute of limitations applicable to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and subsequently denied Plaintiffs leave to file a second amended complaint. Plaintiffs now appeal. We **AFFIRM**.

## I.     BACKGROUND

Before Plaintiffs' employment as Chrysler executives ended in 2007, they participated in Chrysler's Supplemental Executive Retirement Plan ("SRP"). The SRP was a "top-hat plan," which ERISA defines as an unfunded plan "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2); *see In re IT Group, Inc.*, 448 F.3d 661, 665 (3d Cir. 2006). As an "unfunded" plan, beneficiaries escape tax obligations until the funds are received, but the plan's funds must remain "subject to the claims of the employer's creditors." *In re IT Group, Inc.*, 448 F.3d at 665. To facilitate benefit payments under the SRP, Chrysler established a "Rabbi Trust" with State Street serving as trustee. A "rabbi trust" is a mechanism through which an employer may segregate top-hat plan funds "without jeopardizing a plan's 'unfunded' status." *Id.* "Funds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." *Id.*

In 1998, Chrysler merged with Daimler-Benz AG to form Daimler Chrysler AG; Chrysler changed its name to DaimlerChrysler Corporation, a wholly-owned subsidiary of Daimler Chrysler AG. Plaintiffs allege that Defendants were aware since 2005 that

DaimlerChrysler Corporation "was suffering serious financial difficulties and was in danger of filing for bankruptcy." Under the SRP, DaimlerChrysler was authorized to buy out an employee's right to benefits by creating an annuity paying an equivalent stream of income as the SRP. According to Plaintiffs, at some point in 2005 and/or 2006, Defendants "decided to institute a practice of purchasing annuities" to securitize the SRP benefits of active DaimlerChrysler employees, but not "the vast majority of the former employees," including Plaintiffs.

In 2007, Daimler Chrysler AG sold its majority interest in DaimlerChrysler Corporation to Cerberus Capital Management, L.P. DaimlerChrysler Corporation then "became known as Chrysler LLC," while Daimler Chrysler AG "changed its name to Daimler AG." Shortly thereafter, in 2009, Chrysler LLC filed for bankruptcy. As a result of the bankruptcy proceedings, Chrysler LLC became "jointly owned by Fiat SpA, the United Auto Workers of America, and the governments of the United States and Canada." The assets of the Rabbi Trust established by Chrysler became part of the bankruptcy estate and were used to satisfy Chrysler's creditors. Plaintiffs—retirees that Chrysler did not buy out with securitized annuities—lost their benefits under the unfunded SRP.

In September 2010, Plaintiffs filed suit in Michigan's Wayne County Circuit Court, bringing several state-law claims relating to their loss of benefits, including promissory estoppel, breach of fiduciary duty, and fraud. Plaintiffs also brought an age-discrimination claim under ELCRA, alleging that the decision to purchase annuities for only active employees "had the effect of discrimination against the former and retired employees . . . on the basis of age."

Defendants removed the case to the United States District Court for the Eastern District of Michigan on October 19, 2010. Daimler, State Street, and LaSorda subsequently filed

separate motions to dismiss.[1]  The district court granted the motions, finding that Plaintiffs' fiduciary duty claims were completely preempted by ERISA and that their remaining claims were expressly preempted.  Determining that Plaintiffs' claims to enforce the terms of the SRP and the Rabbi Trust also could not succeed under ERISA § 1132(a)(1)(B) or (a)(3), the district court denied as futile Plaintiffs' request of leave to amend the complaint.  Plaintiffs appealed.

We affirmed the district court's dismissal of all of Plaintiffs' claims except for their age-discrimination claim.  *Loffredo v. Daimler AG*, 500 F. App'x 491, 493 (6th Cir. 2012) (Sutton, J., majority opinion).[2]  We agreed with the district court that ERISA completely preempted Plaintiffs' fiduciary-duty claim and expressly preempted their fraud claim, but found that Plaintiffs' failure to plead a claim of promissory estoppel rendered unnecessary any preemption analysis as to that claim.  *Id.* at 496–98 (Sutton, J., majority opinion); *id.* at 502 (Moore, J., majority opinion).  We then reversed the district court's dismissal of Plaintiffs' age-discrimination claim.  *Id.* at 498–99 (Sutton, J., majority opinion); *id.* at 503 (Moore, J., majority opinion).  Because the federal ADEA "uses state-law counterparts to bolster enforcement of the federal law" and prohibits the type of disparate impact that Plaintiffs alleged, and because ERISA's savings clause, § 1144(d), "preserves state-law claims from preemption to the extent they mirror ADEA claims," we remanded Plaintiffs' age-discrimination claim to the district court.  *Id.* at 498–99 (Sutton, J., majority opinion).  We lastly rejected Plaintiffs' argument that "the district court erred in denying [P]laintiffs leave to amend their complaint to raise new ERISA-based claims."  *Id.* at 499 (Sutton, J., majority opinion); *id.* at 502 n.2 (Moore, J., majority opinion).

---

[1]Plaintiffs originally sued Cerberus L.P. and Dieter Zetsche, another Chrysler executive, as well, but all claims against them have been dismissed, and they are not part of the instant appeal.

[2]The majority opinion in our 2012 decision consists of portions of the writing by Judge Sutton and all of the writing by Judge Moore.  Specifically, Judge Stranch joined in Judge Sutton's writing except as to Section II through II.A and joined in Judge Moore's writing in its entirety.  When citing the 2012 majority opinion here, we note the author.

On remand, Plaintiffs sought leave to file an amended complaint that maintained their age-discrimination claim but also added claims against the defendants under ERISA. The district court granted leave to amend in part but denied leave to assert ERISA-based claims because the issue had "already been addressed by [the district court] and the Sixth [Circuit]."

In 2013, Plaintiffs filed a First Amended Complaint that asserted a single state-law claim for age discrimination. Defendants moved to dismiss the claim, arguing among other things that Plaintiffs had failed to meet the ADEA's administrative prerequisites and thus their ELCRA claim did not "mirror" a claim that could be brought under the ADEA. Agreeing that Plaintiffs' ELCRA claim was preempted because it was filed outside of the ADEA's statute of limitations and thus did not "mirror" the ADEA, the district court granted the motions to dismiss.

Plaintiffs moved to file a second amendment to the complaint alleging that one of the Plaintiffs, Lino Piedra, filed a charge of discrimination with the Equal Employment Opportunity Commission within the ADEA's statute of limitations. Construing Plaintiffs' motion as one for reconsideration of the order dismissing Plaintiffs' First Amended Complaint, the district court denied it, finding that Piedra's EEOC charge complained only of post-bankruptcy conduct and did not name any of the Defendants here but rather Chrysler Group, LLC—the company formed after Chrysler LLC's bankruptcy. The district court then entered final judgment. Plaintiffs timely appealed.

## II. ANALYSIS

Plaintiffs challenge the district court's (1) denial of leave to amend their complaint to add ERISA-based claims on remand, (2) dismissal of their ELCRA age-discrimination claim, and (3) denial of leave to file a second amended complaint to include allegations regarding Piedra's EEOC charge. We consider each challenge in turn.

A.      **Denial of Leave to Add ERISA Claims to Complaint**

Plaintiffs first argue that the district court erred in refusing on remand to allow them to add ERISA-based claims to the complaint.  "We review the denial of a motion for leave to amend for abuse of discretion, except when the denial was due to futility, in which case we review de novo."  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Addressing this claim requires an in-depth explanation of the litigation history of the ERISA claims.  In opposing Defendants' first motion to dismiss in 2011, Plaintiffs argued that their state-law claims were not preempted and, in the alternative, requested leave to amend to assert claims under § 1132(a)(1)(B) "in order to enforce the terms of the SRP and the Rabbi Trust."  Section 1132(a)(1)(B) of ERISA provides that a participant of an employee benefit plan may bring a civil action "to enforce his rights under the terms of the plan."  Plaintiffs did not specify the exact terms that Defendants violated.  They also sought to add a claim under § 1132(a)(3)—which provides for "other appropriate equitable relief"[3]—seeking restitution of property held by Defendants and an accounting.

The district court denied Plaintiffs' request to amend, concluding that Plaintiffs could not bring a successful claim against Defendants under either section.  Plaintiffs' § 1132(a)(1)(B) claims would fail because "[m]uch of the alleged misconduct upon which the Plaintiffs' claims are based is conduct that is specifically permitted or even mandated by the terms of the SRP and trust."  And Plaintiffs could not be given equitable relief under § 1132(a)(3) because their claims were legal in nature, having included "no allegation that the funds are in the possession of any defendant."

---

[3]ERISA contains three civil-enforcement provisions.  In addition to the two discussed above, § 1132(a)(2) provides for enforcement of various fiduciary-duty requirements; top-hat plans are specifically exempt from these requirements, however, and Plaintiffs do not attempt to assert claims under this section.

In that initial appeal, Plaintiffs argued for the first time that Defendants breached specific provisions of the Rabbi Trust document that could be enforced under § 1132(a)(1)(B). We held that the district court did not err because Plaintiffs "did not allege conduct of the [D]efendants that violated provisions of any trust document" in the district court and could not argue for the first time on appeal that specific provisions were violated. *Loffredo*, 500 F. App'x at 499–500 (Sutton, J., majority opinion). We further clarified that it "appear[ed] futile" for Plaintiffs to restate their state-law claims under § 1132(a)(1)(B) because, "[a]s the district court concluded, the Plan authorizes the administrators to purchase annuities on a selective basis." *Id.* at 502 n.2 (Moore, J., majority opinion). As for § 1132(a)(3), we agreed with the district court that Plaintiffs could not assert a claim because they did not allege that Defendants "currently (and improperly) possess the assets dispersed from the [Rabbi Trust] or that they retain profits generated from that property." *Id.* at 499 (Sutton, J., majority opinion) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, 214 n.2 (2002)). We then reversed the district court's dismissal of Plaintiffs' age-discrimination claim and remanded for further proceedings.

On remand, Plaintiffs' proposed first amended complaint alleged ERISA claims under § 1132(a)(1)(B) and 1132(a)(3), again arguing that Defendants violated specific terms of the Rabbi Trust—the same trust provisions that Plaintiffs had raised for the first time during the first appeal. Relying on its prior decision and our affirmance on appeal, the district court denied leave to file the proposed first amended complaint to assert ERISA-based claims. Defendants now cite the "law of the case" doctrine, which states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004) (quoting *Arizona v. California*,

460 U.S. 605, 618 (1983)).  Indeed, our prior opinion found that granting Plaintiffs leave to add the exact § 1132(a)(1)(B) allegations that they attempted to add on remand would be futile. *See Loffredo*, 500 F. App'x at 502 n.2 (Moore, J., majority opinion).  And Plaintiffs' proposed first amended complaint again failed to allege that Defendants currently and improperly possess the Rabbi Trust's funds—which in 2012 we found fatal to any § 1132(a)(3) claim.  *See id.* at 499 (Sutton, J., majority opinion).  Instead, Plaintiffs continued to allege that the funds were removed from the Rabbi Trust to "improperly use[] for operational expenses of Chrysler LLC," "to fund buyouts and other corporate obligations to certain executives," and to protect the retirement benefits of actively employed SRP participants.  Lacking reason to reverse our prior decision now, we conclude that the district court did not err in denying Plaintiffs leave to add ERISA claims on remand.

> ### B. Dismissal of Age-Discrimination Claim

Plaintiffs next challenge the district court's dismissal of their state-law age discrimination claim as preempted by ERISA.  We review de novo whether a state-law claim is preempted by ERISA.  *Briscoe v. Fine*, 444 F.3d 478, 496 (6th Cir. 2006) (citing *Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir. 2003)).  ERISA preempts all state laws that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S 85, 96–97 (1983).  ERISA also contains a preemption savings clause, however, providing that "[n]othing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."  29 U.S.C. § 1144(d).

In *Shaw*, the Supreme Court held that state laws are saved from ERISA preemption to the extent the state laws "play a significant role in the enforcement of" a federal statute. *See* 463 U.S at 101. Specifically, the Court considered whether New York's Human Rights Law—which extended employment protections to pregnant workers that Title VII, at the time, did not provide—was preempted by ERISA. *See id.* at 88–89. Under Title VII, when an unlawful employment practice occurs in a state that also prohibits that practice, the EEOC "refers the charges to the state agency," and the EEOC itself "may not actively process" the charge until the conclusion of the state proceedings. *Id.* at 101–02; *see* 42 U.S.C. §§ 2000e-5(c), 2000e-7. The Court explained that, if ERISA were to preempt the entirety of New York's Human Rights Law, the EEOC "would be unable to refer the claim to the state agency," which would "frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones." *Id.* at 102. Given Title VII's design, this would "'modify' and 'impair' federal law," activating ERISA's savings clause to preserve the Human Rights Law to the extent it provided a means of enforcing Title VII's commands. *Id.* (quoting 29 U.S.C. § 1144(d)).

The Court nevertheless concluded that ERISA's savings clause did not preserve the Human Rights Law "[i]nsofar as [it] prohibit[s] employment practices that are lawful under Title VII." *See id.* at 103. Enforcement of Title VII "in no way depends" on extension of "nondiscrimination laws to areas not covered by Title VII," and the Court "fail[ed] to see how federal law would be impaired by preemption of a state law prohibiting conduct that federal law permitted." *Id.* at 103–04. As the Court reasoned, "Title VII would prohibit precisely the same employment practices, and be enforced in precisely the same manner, even if no State made additional employment practices unlawful." *Id.* at 103.

Applying the principles of *Shaw* in our 2012 opinion, we held that the ADEA—like Title VII—"uses state-law counterparts to bolster enforcement of the federal law," and thus ERISA's savings clause "preserves state-law claims from preemption to the extent they mirror ADEA claims." *Loffredo*, 500 F. App'x at 498 (Sutton, J., majority opinion) (citations omitted). Because the ADEA prohibits the type of conduct Plaintiffs alleged in their complaint, we reversed the district court's holding that ERISA preempted Plaintiffs' age-discrimination claim and remanded for further proceedings. *Id.* at 498–99 (Sutton, J., majority opinion). On remand, Defendants argued for the first time that Plaintiffs' ELCRA claim did not "mirror" an ADEA claim, even though the ADEA covered the same substantive conduct, because Plaintiffs filed it outside the ADEA's statute of limitations. The district court agreed and again dismissed the claim as preempted by ERISA.

Defendants broadly posit that a state-law claimant must follow all administrative prerequisites of a corresponding federal statute—such as filing an administrative charge or exhausting a preliminary administrative process—even if, unlike a statute of limitations, they are of a type entirely absent in the state law and thus wholly inapplicable to the state-law proceeding. Plaintiffs respond just as broadly that they were not required to satisfy any of the ADEA's procedural requirements and that "[i]nterpreting ERISA to preempt each and every aspect of the ELCRA (including its procedural provisions) that are inconsistent with the ADEA . . . would improperly undermine ERISA's foremost goal of protecting the interests of employees." Like the district court, however, we need only address a narrower question, though one of first impression in our circuit: whether ERISA preempts a state-law antidiscrimination claim that is filed outside a corresponding federal law's statute of limitations but within the state law's longer

statute of limitations, despite both state and federal law imposing liability for the same substantive conduct.

In answering affirmatively the question now before us, the district court cited *Nolan v. Otis Elevator Co.*, 505 A.2d 580 (N.J.), *cert. denied*, 479 U.S. 820 (1986), and *Warren v. Oil, Chemical & Atomic Workers, Union-Industry Pension Fund*, 729 F. Supp. 563 (E.D. Mich. 1989). In *Nolan*, the New Jersey Supreme Court considered whether ERISA preempted an age-discrimination claim under New Jersey's Law Against Discrimination ("NJLAD") "when the action is brought after the comparable federal time requirement for such an action." *Nolan*, 505 A.2d at 581. Analyzing *Shaw*, the state court determined that, because ERISA's savings clause "preserves a state law only if its extinction would impair a federal law," "the question of the availability of the state remedy sought turns on whether it is necessary to the continued life of the federal program." *Id.* at 585, 589. The state court concluded that "invocation of the state judicial remedy after a federal remedy is no longer available does not further the federal program," and thus ERISA preempted the NJLAD age-discrimination claim because it was untimely under the ADEA. *Id.* at 588–89. In *Warren*, a Michigan district court relied on *Nolan* to find that the plaintiff's ELCRA claims were preempted by ERISA. 729 F. Supp. at 567. Because Michigan's "longer period of limitations did not further the goal of the ADEA," the ELCRA was preempted by ERISA "to the extent that the state's limitation period exceeds the 300 day period under ADEA." *Id.*; *see also Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 625 (D.N.J. 1997) ("An age discrimination suit brought under a state statute, such as NJLAD, which has a longer period of limitation than its federal counterpart and does not require any state mediative process, does not further the goals of the ADEA so as to escape ERISA preemption." (citing *Nolan*, 505 A.2d 580)).

*Nolan* and *Warren* have grounding in the logic of *Shaw*. The *Shaw* Court's concern was that, if ERISA preempted state antidiscrimination laws, a claimant would be left with only a *federal* remedy even though Title VII encouraged a "joint state/federal enforcement" scheme. *See Shaw*, 463 U.S. at 102. ERISA's savings clause, therefore, preserved the state law to the extent that preemption would disrupt enforcement of Title VII. *Id.* Here, by contrast, the federal right has been extinguished as untimely under the ADEA. The ADEA provides that "[n]o civil action may be commenced by an individual . . . until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1). In a state like Michigan that "has a law prohibiting discrimination in employment because of age," the EEOC charge for a federal claim "shall be filed . . . within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." *Id.* at §§ 626(d)(1), 633(b). For its state claims, Michigan law imposes a three-year statute of limitations. *See* Mich. Comp. Laws Ann. § 600.5805(1), (10); *see also Loffredo*, 500 F. App'x at 499 (Sutton, J., majority opinion). Based on the allegations of Plaintiffs' first amended complaint, Plaintiffs filed neither an EEOC charge nor their civil action within the ADEA's required timeframe, but did meet Michigan's requirement. Under *Shaw*'s reasoning, however, because the ADEA would continue to "prohibit precisely the same employment practices, and be enforced in precisely the same manner," if Plaintiffs' ELCRA claim is preempted, ERISA's savings clause does not preserve Michigan's statute of limitations. *See Shaw*, 463 U.S. at 103.

While it may seem odd that Plaintiffs—bringing only a state-law discrimination claim and not seeking federal relief—must allege compliance with a federal statute of limitation, the *Shaw* Court recognized that its interpretation of ERISA's savings clause "may cause certain

practical problems" with enforcement of state laws. *Id.* at 105. The Court illustrated one problem it foresaw: "Courts and state agencies, rather than considering whether employment practices are unlawful under a broad state law, will have to determine whether they are prohibited by Title VII. If they are not, the state law will be superseded and the agency will lack authority to act." *Id.* at 105–06. Nevertheless, the Court concluded,

> these minor practical difficulties do not represent the kind of "impairment" or "modification" of *federal* law that can save a *state* law from pre-emption under [ERISA's savings clause]. To the extent that our construction of ERISA causes any problems in the administration of state fair employment laws, those problems are the result of congressional choice and should be addressed by congressional action.

*Id.* at 106. In other words, Congress's concern in preempting state laws under ERISA, as expressed by ERISA's savings clause, was the impairment and modification of *federal* law, not *state* law. Moreover, the outcome of applying *Shaw*'s reasoning here recognizes, as both we and the Supreme Court have, that a statute of limitation is a significant and substantive limitation on the rights created by a statute, not just a procedural detail. *See Engel v. Davenport*, 271 U.S. 33, 38 (1926) (describing statute of limitations as "material element" in holding Merchant Marine Act preempted state statute of limitations); *Whitfield v. Knoxville*, 756 F.2d 455, 461–62 (6th Cir. 1985). Accordingly, ERISA preempts Plaintiffs' age-discrimination claim because it is untimely under the ADEA and preemption of Michigan's statute of limitations neither impairs nor modifies federal law.

### C.      Denial of Leave to Include EEOC Charge in Complaint

Plaintiffs lastly argue that the district court erred in denying leave to file a second amended complaint to add allegations regarding Piedra's EEOC charge. The district court construed Plaintiffs' motion for leave as a motion for reconsideration. We review the denial of a motion for reconsideration under the abuse-of-discretion standard. *Indah v. U.S. S.E.C.*,

661 F.3d 914, 924 (6th Cir. 2011) (citing *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004)). "A motion for reconsideration is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Id.* (citing E.D. Mich. Local Rule 7.1(h)).

Piedra's EEOC charge lists the earliest date of discrimination as May 1, 2009, the date that Chrysler LLC filed for bankruptcy. The charge alleged that Chrysler Group, LLC—the company formed as part of Chrysler LLC's bankruptcy—discriminated on the basis of age by only partially assuming the obligation to pay benefits under the SRP after the bankruptcy. (*Id.*) Plaintiffs' first amended complaint alleged different discriminatory conduct by Defendants that took place prior to Chrysler LLC's bankruptcy: specifically, Defendants' practice in 2005 and/or 2006 of "purchasing annuities, providing lump sum payments, transferring benefits to a qualified retirement plan, or otherwise securitizing the SRP retirement benefits of participants in the plan who were at the time still actively employed" at the company but not the benefits of former employees, including Plaintiffs. According to the complaint, this practice "continued until the time of Chrysler[ LLC]'s bankruptcy."

Plaintiffs argue that their age-discrimination claim is "reasonably expected to grow" from the allegations of Piedra's EEOC charge. Under our "expected scope of investigation test," "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). For example, if a plaintiff's EEOC charge complains only of

discrimination based on race, but lists facts from which a retaliation charge could be anticipated, the plaintiff will not be prevented from bringing a lawsuit alleging the retaliation claim. *See id.*

Here, however, while complaining of age discrimination on behalf of Piedra, the EEOC charge alleges different conduct by a different employer from a different timeline that started after the bankruptcy, and thus after the discrimination alleged in the first amended complaint ended. Plaintiffs cite no authority supporting their argument that Chrysler Group, LLC's conduct after Chrysler LLC's bankruptcy in 2009 would prompt investigation into Defendants' conduct before it. Finding no "palpable defect" in the district court's order, *see Indah*, 661 F.3d at 924, we therefore conclude that the district court did not abuse its discretion in denying Plaintiffs' motion for reconsideration.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court.